**2022-2036**

# United States Court of Appeals for the Federal Circuit

ALEXSAM, INC.,

*Plaintiff-Appellant,*

– v. –

AETNA, INC.,

*Defendant-Appellee.*

*On Appeal from the United States District Court for the District of Connecticut in Case No. 3:19-cv-0010125-VAB, Honorable Victor A. Bolden, Judge*

## BRIEF FOR DEFENDANT-APPELLEE

THOMAS G. ROHBACK
MATTHEW S. MURPHY
AXINN, VELTROP
& HARKRIDER LLP
90 State House Square
Hartford, Connecticut 06103
(860) 275-8100
trohback@axinn.com
mmurphy@axinn.com

*Attorneys for Defendant-Appellee*

MARCH 17, 2023

COUNSEL PRESS, LLC (888) 277-3259

## PATENT CLAIMS AT ISSUE

U.S. Patent No. 6,000,608—Multifunction card system

32. A multifunction card system comprising:

a. at least one debit/medical services card having a unique identification number encoded on it comprising a bank identification number approved by the American Banking Association for use in a banking network;

b. a transaction processor receiving card data from an unmodified existing standard point-of-sale device, said card data including a unique identification number;

c. a processing hub receiving directly or indirectly said card data from said transaction processor; and

d. said processing hub accessing a first database when the card functions as a debit card and said processing hub accessing a second database when the card functions as a medical card.

33. The multifunction card system of claim 32, wherein the unique identification number further comprises a medical identification number.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2022-2036

**Short Case Caption** Alexsam, Inc. v. Aetna Inc.

**Filing Party/Entity** Aetna Inc.

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/17/2023

Signature: /s/ Thomas G. Rohback

Name: Thomas G. Rohback

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Aetna Inc. | | CVS Pharmacy, Inc. |
| | | CVS Health Corporation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

| **4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4). ☐ None/Not Applicable ☐ Additional pages attached | | |
|---|---|---|
| John M. Tanski | Drew A. Hillier (formerly associates with Axinn, Veltrop & Harkrider LLP) | |
| | | |
| | | |

| **5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b). ☑ None/Not Applicable ☐ Additional pages attached | | |
|---|---|---|
| | | |
| | | |
| | | |

| **6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6). ☐ None/Not Applicable ☐ Additional pages attached | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

PATENT CLAIMS AT ISSUE ........ i

TABLE OF CONTENTS ........ v

STATEMENT OF RELATED CASES ........ xii

INTRODUCTION ........ 1

SUPPLEMENTAL JURISDICTIONAL STATEMENT ........ 4

COUNTER-STATEMENT OF THE ISSUES ........ 4

STATEMENT OF THE CASE ........ 5

I. PROCEDURAL HISTORY ........ 5

A. The District Court Gives AlexSam Specific Guidance and Multiple Opportunities to Plead A Plausible Claim, and AlexSam Repeatedly Fails. ........ 5

1. AlexSam Knew from The Outset That Aetna Inc. Was A Holding Company and That Subsidiary Companies Sold Group Health Insurance. ........ 5

2. By December 6, 2019, AlexSam Had Filed Three Complaints—Adding A Claim Regarding MasterCard, but Not Adding Any New Defendants. ........ 6

3. AlexSam Moves to Transfer and Seeks a Stay. ........ 8

4. The District Court Hears Argument on Aetna Inc.'s Motion to Dismiss. ........ 9

5. The District Court Dismisses The SAC. ........ 12

6. Rather Than Addressing The Deficiencies The District Court Identified, AlexSam Files A Barrage of Post-Ruling Motions. ........ 14

7. AlexSam Again Fails to Fix The Defects in Its Pleadings, and The District Court Dismisses with Prejudice. ........ 15

SUMMARY OF THE ARGUMENT ....................................................................16

ARGUMENT ..............................................................................................17

II. STANDARD OF REVIEW. ..................................................................17

III. ALEXSAM'S INFRINGEMENT ALLEGATIONS AGAINST AETNA INC. ARE NOT PLAUSIBLE UNDER *TWOMBLY* AND *IQBAL*. ..............................20

A. AlexSam Has Not Alleged Any Viable Theory Under Which Aetna Inc. Is Responsible for Infringing The Asserted System Claims. ..................21

1. AlexSam Pleads Itself out of Court by Incorporating Exhibits Undermining Its Claim That Aetna Inc. Is Liable for Infringement. ..................21

2. AlexSam Repeatedly Failed to Allege Facts Supporting A Claim of Infringement by This Holding Company. ................................25

B. AlexSam Fails to Plead The Necessary Facts to Establish Any of Its Infringement Theories. .........................27

1. There Is No Plausible Allegation of An "Unmodified Existing Standard Point-of-Sale Device" ...........29

2. AlexSam Fails to Plausibly Allege That Aetna Inc. Directly Infringes by "Using" or "Making" the Claimed System..........................32

3. AlexSam Fails to Plausibly Allege That Aetna Inc. Indirectly Infringes.............................36

C. AlexSam's Allegations of Infringement of The "Transparent" System Patent Are Conclusory and Unenhanced by Necessary Factual Details. .................................43

IV. ALEXSAM'S MASTERCARD INFRINGEMENT CLAIM IS ALSO IMPLAUSIBLE IN LIGHT OF THE AMPL ................44

A. AlexSam Expressly Alleges That Aetna Inc. Participates in Activation Processes That AlexSam Admits Are Licensed............45

B. AlexSam Ignores The Amendment That Significantly Broadened The AMPL. ........................................48

C. AlexSam Incorrectly Asserts That The Applicability of The AMPL Was An Affirmative Defense That Could Not Be Decided on A Motion to Dismiss. .........50

D. AlexSam Waived Its MasterCard Infringement Claim By Seeking Leave to Delete It............................52

V. ALEXSAM FAILED TO SHOW GOOD CAUSE FOR ITS FAILURE TO TIMELY ADD AETNA LIFE OR PAYFLEX AS DEFENDANTS. ..........................53

CONCLUSION ..........................................................................................56

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AlexSam, Inc. (‘608 & ‘787) Patent and Contract Litig.*,
437 F. Supp. 3d 1374 (J.P.M.L. 2020) ....................................................9

*AlexSam, Inc. v. Cigna Corp.*,
No. 2:20-cv-00081-JRG-RSP, 2021 WL 1561606
(E.D. Tex. Apr. 20, 2021) ....................................................31

*AlexSam, Inc. v. Cigna Corp.*,
No. 2:20-cv-00081-RWS-RSP, 2022 WL 807995
(E.D. Tex. Mar. 16, 2022) ....................................................31

*AlexSam, Inc. v. Datastream Card Services Ltd.*,
No. 2:03-cv-00337-TJW, 2005 WL 6220095
(E.D. Tex. Jun. 10, 2005) ....................................................31

*AlexSam, Inc. v. HealthEquity, Inc.*,
No. 2:19-cv-00445-HCN-CMR (D. Utah Jun. 26, 2019) ....................25, 49

*AlexSam, Inc. v. Humana, Inc.*,
C.A. No. 2:07-cv-288, 2009 WL 2843333
(E.D. Tex. Aug. 28, 2009) ....................................................31

*AlexSam, Inc. v. IDT Corp.*,
715 F.3d 1336 (Fed. Cir. 2013) ....................................................30, 47

*AlexSam, Inc. v. MasterCard Int’l, Inc.*,
No. 1:15-cv-2799-ILG-SMG, 2020 WL 3286785 (E.D.N.Y. June
17, 2020), *rev’d* 2022 WL 621374 (Fed. Cir. Mar. 3, 2022)....................6, 49, 51

*AlexSam, Inc. v. MasterCard Int’l, Inc.*,
No. 1:15-cv-2799-ILG-SMG, 2022 WL 2541433
(E.D.N.Y. July 7, 2022) ....................................................49

*AlexSam, Inc. v. WageWorks, Inc.*,
No. 3:19-cv-4538-EMC (N.D. Cal. Aug. 2, 2019) ....................25, 48, 49

*Allen v. N.Y.C. Hous. Auth.*,
No. 10 CIV. 168 (CM) (DF), 2012 WL 4794590
(S.D.N.Y. Sept. 11, 2012)....................................................................52

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................*passim*

*Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*,
361 F. Supp. 2d 210 (S.D.N.Y. 2005) ....................................................26

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................*passim*

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
681 F.3d 1323 (Fed. Cir. 2012) ..................................................17, 42

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342,1352 (Fed. Cir. 2021) ...............................................*passim*

*Botwinick v. Credit Exchange, Inc.*,
213 A.2d 349 (Pa. 1965)..........................................................26, 27

*Centrak, Inc. v. Sonitor Technologies, Inc.*,
915 F.3d 1360 (Fed. Cir. 2019) ............................................................35

*Colony Grill Dev., LLC v. Colony Grill, Inc.*,
No. 21-2136, 2022 WL 950950 (2d Cir. Mar. 30, 2022) ...........................53

*Conley v. Gibson*,
355 U.S. 41 (1957). (AlexSam Br. .)......................................................18

*DoDots Licensing Solutions LLC v. Lenovo Holding Co.*,
No. 18-098 (MN), 2018 WL 6629709 (D. Del. Dec. 19, 2018).......................39

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
375 F.3d 168 (2d Cir. 2004) ..................................................................52

*Fujitsu Ltd. v. Netgear Inc.*,
620 F.3d 1321 (Fed. Cir. 2010) ............................................................38

*Grecia v. McDonald's Corp.*,
724 Fed. Appx. 942 (Fed. Cir. 2018)......................................................33

*Grochowski v. Phoenix Const*
., 318 F.3d 80 (2d Cir. 2003) ....................................................................55

*Int'l Media Films, Inc. v. Lucas Entm't, Inc.*,
No. 07 Civ. 1178(JGK)(FM), 2008 WL 781823
(S.D.N.Y. Mar. 20, 2008) ..........................................................................55

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
850 F.3d 1315 (Fed. Cir. 2017) ..................................................................51

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
870 F.3d 1320 (Fed. Cir. 2017) ..........................................................33, 34

*IP Communication Solutions, LLC v. Viber Media (USA), Inc.*,
No. 16-134-GMS, 2017 WL 1312942 (D. Del. Apr. 5, 2017) .....................39, 40

*JN Contemporary Art LLC v. Phillips Auctioneers LLC*,
29 F.4th 118 (2d Cir. 2022) .........................................................................51

*John O Butler Co. v. Gillette Canada, Inc.*,
No. 91 C 7858, 1993 WL 45938 (N.D. Ill. 1993) ...........................................55

*Manville Sales Corp. v. Paramount Sys., Inc.*,
917 F.2d 544 (Fed. Cir. 1990) .....................................................................26

*Olin Corp. v. E.I. Dupont De Nemours & Corp.*,
No. 05-CV-100S(SC), 2006 WL 839415
(W.D.N.Y. Mar. 27, 2006).....................................................................22, 24, 51

*Parker v. Columbia Pictures Indus.*,
204 F.3d 326 (2d Cir. 2000) .........................................................................55

*Pettaway v. Nat'l Recovery Solutions, LLC*,
955 F.3d 299 (2d Cir. 2020) .........................................................................17

*Stauffer v. Brooks Bros. Grp., Inc.*,
758 F.3d 1314 (Fed. Cir. 2014) ....................................................................34

*Synchronoss Techs., Inc. v. Dropbox, Inc.*,
987 F.3d 1358 (Fed. Cir. 2021) ....................................................................35

*Thomas v. ConAgra Foods, Inc.*,
No. 620-CV-06239-EAW-MJP, 2022 WL 3699408
(W.D.N.Y. Aug. 26, 2022) ....................................................................55

*United States v. Best Foods*,
524 U.S. 51 (1998)....................................................................................26

*Unwired Planet, LLC v. Apple Inc.*,
829 F.3d 1353 (Fed. Cir. 2016) ...............................................................37

**Statutes and Other Authorities**

28 U.S.C. § 1338(a) ........................................................................................4

Fed. R. Civ. P. 15(a)...............................................................................16, 55

Fed. R. Civ. P. 16(b) .........................................................................16, 55, 56

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Defendant-Appellee Aetna Inc. makes the following disclosure:

(a) There has not been a previous appeal in this case.

(b) Decisions in the following cases may affect or be affected by the Court's decision in this case:

(1) *AlexSam, Inc. v. HealthEquity, Inc.*, No. 20-146 (Fed. Cir.)

(2) *AlexSam, Inc. v. Simon Property Grp., L.P.*, No. 22-1598 (Fed. Cir.)

(3) *AlexSam, Inc. v. Cigna Corp.*, No. 22-1599 (Fed. Cir.)

(4) *AlexSam, Inc. v. MasterCard Int'l, Inc.*, No. 22-2046 (Fed. Cir.)

## INTRODUCTION

In June 2019, Plaintiff-Appellant AlexSam, Inc. ("AlexSam") sued Defendant-Appellee Aetna Inc. ("Aetna Inc.") for infringement of Claims 32 and 33 of U.S. Patent No. 6,000,608 ("the '608 Patent"), which expired in 2017. After giving AlexSam multiple attempts to state a plausible infringement claim, the District Court dismissed the case in June 2022. As the allegations and exhibits attached to each of AlexSam's complaints demonstrated, AlexSam knew—from the outset—that Aetna Inc. was a holding company, that separate and specifically identified subsidiaries of Aetna Inc. were licensed to provided health insurance, and that many other entities were involved in providing the cards and accounts at issue.

Despite the detailed information in AlexSam's exhibits regarding the actions of entities other than Aetna Inc. (with no involvement of Aetna Inc.), AlexSam chose not to name any of these other entities as defendants. Instead, without substituting or adding these subsidiaries, and without providing any factual allegations that would justify disregarding the corporate form, AlexSam repeatedly relied on vague and generic assertions to suggest that the holding company Aetna Inc. had somehow infringed its system claims, either directly or indirectly, under a laundry list of infringement theories.

AlexSam's original complaint alleged infringement only as to the use of Visa-branded cards. This complaint **expressly disclaimed** any infringement related to MasterCard-branded cards. (Appx0110–111 ¶ 51 n.1.) Then, AlexSam reversed course and added an infringement claim relating to MasterCard cards. (Appx0437–441.) After Aetna Inc. moved to dismiss, instead of opposing the motion, AlexSam amended again to affirmatively allege that it had provided a license to MasterCard, but further alleged that this license did not cover the claimed infringement.

On September 11, 2020, the District Court dismissed AlexSam's Second Amended Complaint without prejudice, holding that the formulaic infringement allegations against Aetna Inc. were implausible as to systems involving both Visa and MasterCard products given the absence of facts regarding Aetna Inc., the wealth of facts regarding other actors, and the broad scope of the MasterCard License, all of which AlexSam placed before the court as exhibits to its Second Amended Complaint. (Appx0001.)

In presenting the procedural history of the case, AlexSam paints itself as the victim, wrongly blaming a lack of discovery for its failure to allege necessary facts. (AlexSam Br. at 6–7.) AlexSam even goes so far as to tell this Court that "AlexSam could not obtain discovery because of the COVID-19 pandemic and the schedule(s) set by the Court." (AlexSam Br. at 8.) But AlexSam's own

allegations, admissions, and exhibits demonstrate that AlexSam needed no discovery to know that it had sued the wrong party. Moreover, as the Supreme Court observed in *Bell Atlantic Corp. v. Twombly*, a party needs to allege sufficient **facts** to establish a plausible claim before it has the right to launch discovery. 550 U.S. 544, 558–59 (2007). Here, AlexSam offered mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action," *id.* at 555, devoid of any facts plausibly connecting Aetna Inc. to an infringing system with multiple components. AlexSam needed no discovery to know that Aetna Inc. was a non-operating parent holding company. AlexSam also needed no discovery to identify the other entities that actually provided health insurance, administered benefit plans, or provided health debit cards. But AlexSam repeatedly chose not to name any of them as defendants.

To succeed in that litigation strategy, AlexSam needed to plead **facts**—facts connecting Aetna Inc. to the claimed acts of infringement. AlexSam repeatedly failed to do that. AlexSam's generic pleadings of infringement would have been problematic enough had they been asserted against Aetna Inc.'s operating subsidiaries, but they were all the more implausible when alleged against Aetna Inc. The District Court was right to dismiss these implausible claims, and this Court should affirm the dismissal.

## SUPPLEMENTAL JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over Plaintiff-Appellant AlexSam, Inc.'s claim for patent infringement pursuant to 28 U.S.C. § 1338(a). On June 24, 2022, the District Court denied AlexSam's motion for leave to amend and dismissed the case with prejudice. (Appx0074.) AlexSam filed a notice of appeal on July 15, 2022. (Appx2431.)

## COUNTER-STATEMENT OF THE ISSUES

(1) Whether AlexSam's case was properly dismissed where AlexSam repeatedly alleged patent infringement claims solely against a parent holding company rather than its operating company subsidiaries, even though AlexSam's own allegations and exhibits attached to the Complaint showed that other corporate entities, including subsidiaries of Aetna Inc.—but not Aetna Inc. itself—were actually involved in business activities that had some connection to the business of health insurance or third-party administration of such plans.

(2) Whether the District Court correctly dismissed infringement claims against Aetna Inc. regarding accused systems involving the PayFlex MasterCard card where AlexSam never attempted to add PayFlex as a defendant and where AlexSam had affirmatively alleged the existence of the AlexSam-

MasterCard Patent Licensing Agreement which AlexSam attached as an exhibit to the Second Amended Complaint.

# STATEMENT OF THE CASE

## I. PROCEDURAL HISTORY

### A. The District Court Gives AlexSam Specific Guidance and Multiple Opportunities to Plead A Plausible Claim, and AlexSam Repeatedly Fails.

In its June 24, 2022 Ruling and Order dismissing the case with prejudice, the District Court succinctly described the tortured history of AlexSam's pleadings:

> The proposed amended pleading represents AlexSam's sixth opportunity to state a viable claim. The deficiencies in AlexSam's Complaint remain nearly three years to the day of this case's initial filing, and after being afforded multiple opportunities to cure them. Under these circumstances, AlexSam's inability to remedy the deficiencies in its Complaint in a timely fashion warrants denial of further leave to amend.

(Appx0081.) This reference to "AlexSam's sixth opportunity to state a viable claim" includes the three proposed Third Amended Complaints presented to the District Court in AlexSam's failed attempt to remedy the pleading deficiencies the District Court had specifically identified. (*Id.*)

#### 1. AlexSam Knew from The Outset That Aetna Inc. Was A Holding Company and That Subsidiary Companies Sold Group Health Insurance.

AlexSam filed its original complaint on June 28, 2019 and served it on August 2. (AlexSam Br. at 5–6.) That complaint included exhibits which showed

that the name "Aetna" was a brand name and that subsidiary licensed insurance companies offered health insurance:

> Aetna is the brand name for products and services provided by one or more of the Aetna group of subsidiary companies. The Aetna companies that offer, underwrite or administer benefit coverage include: Aetna Health, Inc., Aetna Health Insurance Company of New York, Aetna Health Insurance Company, and/or Aetna Life Insurance Company (Aetna).

(Appx0203; s*ee also* Appx0198 (identifying Aetna Life Insurance Company).) AlexSam, however, chose to sue only the parent holding company, Aetna Inc., rather than any of its subsidiaries, alleging that the holding company infringed AlexSam's patented system and specifically asserting Claims 32 and 33 of the '608 Patent.

2. By December 6, 2019, AlexSam Had Filed Three Complaints—Adding A Claim Regarding MasterCard, but Not Adding Any New Defendants.

AlexSam's original complaint limited its allegations to Visa-branded cards alone, expressly disavowing any infringement related to the use of MasterCard cards: "AlexSam specifically **disclaims** from the 'Accused Products' any MasterCard branded Aetna FSA, HSA, or HRA Cards and any Aetna Cards that operate on the MasterCard network." (Appx0110–111 ¶ 51 n.1.)

Before Aetna Inc. had responded—and without consent from Aetna Inc. or leave of court—AlexSam "voluntarily" filed an amended complaint on October 4,

2019. (Appx0272.) In this First Amended Complaint ("FAC"), AlexSam expressly disclaimed AlexSam's prior disclaimer and added a claim that the "PayFlex MasterCard card" infringed Claims 32 and 33 of the '608 Patent. (Appx0283 ¶ 49.) Even though AlexSam now alleged that Aetna Inc. "offers the PayFlex Card through its subsidiary, PayFlex" (Appx0284 ¶ 54), AlexSam continued to name Aetna Inc. as the sole defendant.

At the parties' Rule 26 conference on October 22, 2019, Aetna Inc. expressly told AlexSam that it had sued a non-operating parent holding company that owned operating insurance company subsidiaries and PayFlex. (AlexSam Br. at 6.) AlexSam proposed that it be given until November 25, 2019 to add parties. (Appx2536.) The District Court ultimately gave AlexSam almost two weeks more than it had requested, setting December 6, 2019 as the last day to add parties. (Appx2550.)

December 6, 2019 was also three days before AlexSam's deadline to respond to Aetna Inc.'s motion to dismiss the First Amended Complaint. (Appx0090.) On December 6, rather than opposing Aetna Inc.'s motion to dismiss, AlexSam mooted that motion by filing a Second Amended Complaint ("SAC"). (AlexSam Br. at 6.) According to AlexSam, the reason for filing this new amended complaint was "to address arguments advanced by Aetna during the parties' Rule 26(f) Conference of Counsel that the Accused MasterCard Products

were licensed under AlexSam's license with MasterCard." (*Id.*) Even though December 6, 2019 was the last day to add new parties, AlexSam chose not to add as party defendants PayFlex, any of Aetna Inc.'s insurance company subsidiaries, or any of the unrelated entities identified in the SAC's exhibits. AlexSam did, however, delete its allegation that systems involving the PayFlex MasterCard infringed Claim 32, electing to proceed with allegations that systems involving Visa products infringed both Claims 32 and 33, but systems involving MasterCard products infringed Claim 33 alone. (Appx0481.)

3. AlexSam Moves to Transfer and Seeks a Stay.

On January 10, 2020, Aetna Inc. moved to dismiss the SAC. (Appx0722.) Rather than filing a responsive brief or pressing ahead with discovery, AlexSam moved to stay the case. AlexSam explained that it had filed a motion before the Judicial Panel on Multidistrict Litigation ("JPML") to transfer this case and several others to the Eastern District of Texas, where it had recently filed a new lawsuit alleging infringement of the '608 Patent against Simon Property Group and where AlexSam had litigated other cases involving the '608 Patent over the years. In the same motion, AlexSam also sought to transfer to the Eastern District of Texas the cases it had separately filed against MasterCard International, Inc. in the Eastern District of New York; HealthEquity, Inc. in the District of Utah; and WageWorks, Inc. in the Northern District of California. (Pl.'s Emergency Mot. for Stay at 11–

13, ECF No. 67.) The District Court granted AlexSam's stay motion and stayed the case pending a decision from the JPML. (Appx2552.)

On March 30, 2020, the JPML denied AlexSam's transfer motion. *In re AlexSam, Inc. ('608 & '787) Patent and Contract Litig.,* 437 F. Supp. 3d 1374 (J.P.M.L. 2020). In its ruling, the JPML found that "[a]t bottom, AlexSam's Section 1407 motion appears to be largely predicated on its dissatisfaction with certain of the magistrate judge's rulings in the New York action [against MasterCard], as well as, relatedly, the action's progress." (*Id.* at 1376.) As to the interpretation of the AlexSam-MasterCard License Agreement, the JPML observed that "AlexSam's contention that it requires significant new discovery related to the nearly fifteen-year-old agreement appears questionable." (*Id.*)

#### 4. The District Court Hears Argument on Aetna Inc.'s Motion to Dismiss.

When the parties reported the JPML's ruling to the District Court, they jointly asked the Court to allow the stay to continue except for the briefing and adjudication of Aetna Inc.'s pending motion to dismiss. The Court agreed. (Appx2556.)

After the motion was fully briefed, the District Court engaged the parties in an extensive oral argument. Among other issues, the District Court probed whether the generic allegations in the SAC were plausible, particularly given that these allegations had been leveled at a parent holding company rather than any of

the operating affiliates identified in the exhibits and attachments to the SAC. When pressed by the Court, AlexSam acknowledged that it could amend again to plead an alter ego theory. The District Court asked, "why not just simply sue the subsidiary?" Counsel to AlexSam responded: "PayFlex, we can certainly do that. We can go to Omaha and sue in Omaha." (Appx2499 (49:8–13)). AlexSam, however, did not ask the District Court for permission to amend to add PayFlex or any insurance company subsidiary as a defendant. Nor did AlexSam ever "go to Omaha" or anywhere else to sue PayFlex directly. Likewise, AlexSam never brought a separate suit against any of the operating health insurance companies.

As discussed extensively at oral argument, AlexSam knew—without any need for discovery—that Aetna Inc. was not an operating insurance company. AlexSam's own infringement analysis also revealed AlexSam's knowledge of the corporate relationships and the roles of the identified operating insurance company subsidiaries. (Appx2453–2454 (3:14–4:12); Appx0572; Appx0555 (showing "Aetna Life Insurance Company" on the back of the Visa HSA card, only the front of which is pictured in the SAC at Appx0468, as well as in AlexSam's Brief at 4).)

Counsel to Aetna Inc. walked through the exhibits and attachments that AlexSam had appended to the SAC, pointing the District Court to the factual chasm separating the information contained in those documents and the conclusory allegations targeting a parent holding company. (Appx2452–2454.) These

documents showed that employers such as Johnson & Johnson and the University of Miami purchased group health insurance coverage for their employees from one of Aetna Inc.'s licensed insurance company subsidiaries such as Aetna Life. (Appx2464–2465.) These employers could also choose to offer individual employees the opportunity to enroll in one or more tax-advantaged benefit accounts like flexible spending accounts ("FSAs"), health reimbursement arrangements ("HRAs") and health savings accounts ("HSAs"). (*Id.*) These accounts could be used to pay for qualified medical expenses, and they were administered by other companies, including PayFlex, JPMorgan Chase, HealthEquity, and WageWorks. (*Id.*) The accounts could be accessed using debit cards issued by still other companies, such as Bank of America and Elan Financial Services. (Appx0548–549.) The cards reflected in the attachments to Exhibit C operated over the Visa card network, (Appx0536), and the cards addressed in Exhibit D operated over the MasterCard network, (Appx0634). A consumer who enrolled in a health plan would have the option to set up an account, and would have the further option to select a health debit card to pay for eligible expenses.

The documents that AlexSam attached to its SAC explicitly identified the many different related and unrelated entities involved in providing services or components related to the accused systems. (*See* Appx2463–2465.) None of these detailed exhibits, however, showed any involvement by Aetna Inc.

Yet AlexSam chose to have the plausibility of its generic infringement allegations reviewed solely in the context of a claim against Aetna Inc. AlexSam failed to allege facts of Aetna Inc. actually making, selling, using, or offering for sale the ’608 Patent’s system or any components of the allegedly infringing system at issue. AlexSam’s own exhibits showed that it was the insurer subsidiaries that engaged in the provision of group health insurance, while PayFlex and others administered benefit accounts and issued cards. AlexSam chose not to name any of these entities as defendants, despite multiple opportunities to do so.

5. The District Court Dismisses The SAC.

The District Court granted Aetna Inc.’s motion to dismiss on September 11, 2020. (Appx0001.) In a detailed 47-page opinion, the District Court addressed each issue that the parties had raised. First, it recognized that the standard for judging the adequacy of a complaint—even a patent infringement complaint—was established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). (Appx0014.) Under this standard, a plaintiff must allege **facts**. It is not sufficient to merely echo the claim language or parrot the infringement standard. (Appx0014 (quoting, *Twombly,* 550 U.S. at 555)*; see also* Appx0023–24 (citing *Iqbal* and *Lyda v. CBS Corp.* 838 F. 3d 1331, 1337 n.2 (Fed. Cir. 2016) (observing that Form 18 was “eliminated from the Federal Rules of Civil Procedure following changes that took effect on December 1, 2015.”).))

As to AlexSam's failure to name the operating companies as defendants, the District Court rejected AlexSam's conclusory assertions in its brief—not alleged in the SAC—"that Aetna has 'alter ego' liability for the conduct of its subsidiaries, including PayFlex." (Appx0038 (quoting Appx1059).) As the District Court ruled, **"AlexSam fails to allege control or direction by Aetna which would warrant disregarding the corporate form."** (Appx0039 (emphasis added).)

Similarly, the District Court rejected AlexSam's argument that the license agreement between AlexSam and MasterCard (the "AMPL") did not cover infringing activity related to the PayFlex MasterCard card. Looking at the language of the AMPL, as well as the positions taken by AlexSam in this case and its separate lawsuit against MasterCard, the District Court held that it was not plausible that Aetna Inc. was practicing the asserted claims without also being licensed. (*See* Appx0016–22.)

The District Court found the remaining allegations of the SAC equally lacking, particularly in the context of those allegations being leveled at the parent holding company, Aetna Inc., and not its operating subsidiaries. The District Court rejected AlexSam's kitchen-sink pleading of single-party direct infringement, divided direct infringement, induced infringement, contributory infringement, and willful infringement and held that AlexSam's generic and conclusory allegations were insufficient to state a plausible claim. (*See* Appx0023–41).)

In sum, the District Court identified the essential elements of each theory and explained what was missing from the SAC, providing a roadmap of the types of factual allegations that would be necessary to nudge AlexSam's allegations across the line from conceivable to plausible—if they could be made in good faith consistent with Rule 11. Notwithstanding Aetna Inc.'s request that the SAC be dismissed with prejudice, the District Court decided that "AlexSam may move for leave to file an amended pleading by October 9, 2020 to the extent the deficiencies identified in this ruling can be addressed." (Appx0001; Appx0044–46.)

6. Rather Than Addressing The Deficiencies The District Court Identified, AlexSam Files A Barrage of Post-Ruling Motions.

Instead of remedying the deficiencies identified by the District Court, AlexSam filed a series of motions: a Motion for "Reconsideration" (Appx1405); a Motion to "Amend or Correct" the complaint (Appx1505); a "Supplemental Motion" for Leave to File a Third Amended Complaint (ECF No. 106); and a Motion Requesting Judicial Notice regarding its Motion for Reconsideration (Appx1859). And for the first time, AlexSam sought to add one of Aetna Inc.'s operating affiliates—Aetna Life—as a party defendant. (Appx1505.)

The District Court denied these motions in a single "Ruling and Order on Pending Motions" (Appx0048), which AlexSam is not challenging in this appeal. (AlexSam Br. at 9 n.4.) Regarding AlexSam's belated attempt to add a new party, the Court noted that AlexSam had not even tried to meet the heightened standard

for amendment under Rule 16: "AlexSam does not, either in its initial brief or reply, offer any reason for its previous failure to add Aetna Life, or any reason why, despite diligence, the December 2019 deadline to add Aetna Life as a defendant could not have been reasonably met." (Appx0069–70.) Rather, the District Court found that "**AlexSam knew or should have known of Aetna Life's identity and potential involvement in this matter, well before the Court dismissed the case, as documents AlexSam appended to each of its original, First Amended, and Second Amended Complaints referenced Aetna Life.**" (Appx0071 (emphasis added).)

Even so, the District Court left the door open for AlexSam to try again to amend "to the extent that AlexSam can file, by August 20, 2021, a motion to amend the Complaint that addresses the deficiencies in the Court's Dismissal Order and includes as an exhibit a proposed Third Amended Complaint." (Appx0073.)

7. AlexSam Again Fails to Fix The Defects in Its Pleadings, and The District Court Dismisses with Prejudice.

AlexSam did make a motion for leave to amend yet again, and it attached a copy of its third attempt at a proposed Third Amended Complaint. (*See* Appx1921.) This latest Proposed Third Amended Complaint made no claim for infringement regarding the use of MasterCard cards. (Appx1925 n. 1.) AlexSam continued, however, to make conclusory allegations against Aetna Inc. without

including the factual allegations necessary to nudge the complaint past conceivable to plausible. (*See* Appx0077–78.) In another ruling AlexSam is not challenging here, *see* AlexSam Br. at 9 n.4, the District Court, citing this Court's recently-issued decision in *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342,1352 (Fed. Cir. 2021), determined that AlexSam's repeated failure to satisfy the Rule 8 pleading standard as articulated in *Twombly* and *Iqbal* was fatal. (Appx0078 (citing *Bot M8* and *JG Techs., LLC v. United States*, 156 Fed. Cl. 691, 714 (2021)).) After three years and six different complaints, the District Court denied leave to amend and dismissed AlexSam's case with prejudice, citing both Rule 15 and Rule 16 of the Federal Rules of Civil Procedure, and noting that under Rule 16, "where a party seeks leave to amend after the deadline to amend pleadings has passed, the Court has greater discretion to deny leave to amend." (Appx0076.) This appeal followed.

## SUMMARY OF THE ARGUMENT

As discussed below, AlexSam's multiple complaints all failed to allege facts connecting the sole defendant, Aetna Inc., to any specific act of infringement of the system claimed by AlexSam's '608 Patent. Although some of Aetna Inc.'s subsidiaries sold insurance policies, and one subsidiary was involved in the business of administering benefit accounts, none of those subsidiaries was named as a party defendant. This failure was not the result of a lack of discovery. From

the outset, AlexSam knew which subsidiaries were engaged in these activities. Yet AlexSam chose not to sue them. Nor did AlexSam attempt to allege facts regarding alter ego or agency liability. Moreover, AlexSam's license to MasterCard provided an additional reason that AlexSam's infringement allegations relating to MasterCard products were implausible.

## **ARGUMENT**

## II. STANDARD OF REVIEW.

"Because it raises a purely procedural issue, an appeal from an order granting a motion to dismiss for failure to state a claim upon which relief can be granted is reviewed under the applicable law of the regional circuit." *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012). The Second Circuit "review[s] de novo a grant of a motion to dismiss pursuant to Rule 12(b)(6)." *Pettaway v. Nat'l Recovery Solutions, LLC*, 955 F.3d 299, 304 (2d Cir. 2020). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Iqbal,* 556 U.S. at 678). As the District Court recognized, meeting this standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (Appx0014 (quoting *Twombly,* 550 U.S. at 555); *see also* Appx0023–24 (citing *Iqbal* and *Lyda,* 838 F. 3d at 1337 n.2 (observing that Form 18 was "eliminated from the

Federal Rules of Civil Procedure following changes that took effect on December 1, 2015.”)).)

Although AlexSam acknowledges the “plausibility” requirement articulated in *Twombly* and *Iqbal*, (*see* AlexSam Br. at 14), it repeatedly cites and quotes *Conley v. Gibson*, 355 U.S. 41 (1957). (AlexSam Br. at 13–14, 28, 30–32.) AlexSam expressly invites this Court to apply *Conley's* “no set of facts” test. (*Id.* at 13.) But sixteen years ago, the Supreme Court’s decision in *Twombly* “retired the *Conley* no-set-of-facts test.” *Iqbal,* 556 U.S. at 670 (citing *Conley*, 355 U.S. 41). The Court explained that “*Conley*’s ‘no set of facts’ language has been questioned, criticized, and explained away long enough” and “is best forgotten.” *Twombly,* 550 U.S. at 562–3. Instead, the Court clarified that Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff to plead “enough facts to state a claim for relief that is plausible on its face.” *Id.* at 570. “A pleading that offers ‘labels and conclusions’ or ‘a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders ‘naked assertion[s]’ devoid of ‘further factual enhancement.’” *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555, 557) (internal citation omitted). Here, the *Twombly* standard, as applied by the Supreme Court in *Iqbal,* provides the proper framework through which to assess AlexSam’s allegations.

First, *Iqbal* teaches that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal,* 556 U.S. at 679. It then cites several examples of conclusory assertions that were properly disregarded in the plausibility analysis even though they were disguised as allegations of fact; e.g., alleging that defendants mistreated the plaintiff "solely on account of his religion, race, and/or national origin," and that one defendant was "the principal architect" and the other was "instrumental" in the mistreatment. These were "bare assertions," "conclusory and not entitled to be assumed true." *Id.* at 680–81. The Court continued: "To be clear, we do not reject these bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Id.*

Second, *Iqbal* drew a careful distinction between specific allegations of wrongdoing lodged against subordinates and the conclusory allegations made against the attorney general and FBI director. *Id.* at 683. Absent allegations of specific facts, "bare assertions" of supervisory liability were inadequate to defeat a motion to dismiss.

Third, *Iqbal* addressed the same plea for discovery that AlexSam makes here. *Id.* at 684. The Supreme Court squarely rejected it: "Because respondent's

complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise." *Id.* at 686.

The same considerations apply equally here. AlexSam's conclusory allegations repeat the limitations of the patented invention and parrot the infringement standard, but they do not provide the "further factual enhancement" necessary to state a plausible claim—particularly against a holding company. Here, the SAC exhibits provide detailed facts regarding the actions of **others**, thereby exposing the allegations against Aetna Inc. to be "bare assertions," which "disentitles them to the presumption of truth." *Id.* at 681.

## III. ALEXSAM'S INFRINGEMENT ALLEGATIONS AGAINST AETNA INC. ARE NOT PLAUSIBLE UNDER *TWOMBLY* AND *IQBAL*.

AlexSam's SAC fails to allege a plausible claim for patent infringement under any of the theories that AlexSam has advanced. The District Court catalogued AlexSam's pleading failures and gave AlexSam multiple opportunities to try to fix them. But the roots of AlexSam's pleading problems run deep. AlexSam provides detailed allegations of the elements of its '608 Patent, but then offers conclusory assertions that Aetna Inc. supposedly makes or uses an infringing system.

## A. AlexSam Has Not Alleged Any Viable Theory Under Which Aetna Inc. Is Responsible for Infringing The Asserted System Claims.

AlexSam has not alleged specific facts showing that the parent holding company Aetna Inc. committed an act of infringement. First, AlexSam effectively pled itself out of court by incorporating detailed exhibits to the SAC that provide specific facts regarding the roles played by **others** related to the accused systems. There are no comparable facts showing activity connecting Aetna Inc. to the alleged infringement. Second, although AlexSam knew of them from the outset, AlexSam did not sue any of the identified Aetna Inc. subsidiaries. Nor did it allege any theory or facts of vicarious or alter ego liability. As a result, the District Court correctly held that AlexSam did not state a plausible infringement claim against Aetna Inc.

### 1. AlexSam Pleads Itself out of Court by Incorporating Exhibits Undermining Its Claim That Aetna Inc. Is Liable for Infringement.

The voluminous exhibits attached to the SAC undermine AlexSam's claim that Aetna Inc. is liable for infringing the asserted system claims. In *Bot M8*, 4 F.4th at 1354, a case that the District Court cited below, this Court cautioned against the risk that a plaintiff might sink its own case by including too many facts that are inconsistent with its theory of liability:

> While a plaintiff need not prove infringement at the pleading stage, here, the FAC contains too much rather than too little, to the point that Bot M8 has essentially

> pleaded itself out of court. While Bot M8 repeatedly emphasizes the number of pages in its FAC, it is the quality of the allegations, not the quantity, that matters. And unfortunately for Bot M8, its allegations, which take a "kitchen sink" approach to pleading, reveal an inconsistency that is fatal to its infringement case . . . .
>
> Under *Iqbal/Twombly*, allegations that are "merely consistent with" infringement are insufficient. *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955. Where, as here, the factual allegations are actually inconsistent with and contradict infringement, they are likewise insufficient to state a plausible claim. As we have said before, while a plaintiff's pleading obligations are not onerous, it is possible that, in pleading its claims, a plaintiff may find it has pleaded itself out of court.

*Bot M8*, 4 F.4th at 1354. In all its pleadings, AlexSam defines Aetna Inc. as "Aetna" and then alleges that "Aetna" "ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises the Accused Products . . . ." (Appx0457; Appx0477.) But the SAC's exhibits clearly state "Aetna" is a brand name for products and services offered by separate insurance company subsidiaries. (Appx0572.) Notwithstanding the contrary facts in the exhibits, AlexSam steadfastly chose to sue only Aetna Inc. Further, AlexSam did not allege any plausible theory of joint or divided infringement tying Aetna Inc. to the collective conduct of these other companies.[1]

[1] AlexSam has not challenged the District Court's conclusion that AlexSam failed to plead a viable joint or divided infringement claim. It has likewise not challenged the dismissal of its willfulness theory. Those issues are thus waived.

Therefore, the Court should not credit this allegation in the face of contrary evidence incorporated into AlexSam's pleading. *See Olin Corp. v. E.I. Dupont De Nemours & Corp.*, No. 05-CV-100S(SC), 2006 WL 839415, at *1 (W.D.N.Y. Mar. 27, 2006) (*citing Feick v. Fleener*, 653 F.2d 69, 75 & n. 4 (2d Cir. 1981)) ("If the documents referenced in the complaint contradict the facts alleged by the plaintiff, the documents control and the court need not accept as true the plaintiff's allegations."). Moreover, insurance companies must be specially and individually licensed and regulated by state law in order to issue insurance policies. (*See* OFFICE OF HEALTH POLICY, U.S. DEP'T OF HEALTH AND HUMAN SERVICES, THE REGULATION OF THE INDIVIDUAL HEALTH INSURANCE MARKET, 3 (2008) ("States license entities that offer health insurance coverage and have established laws that control their structure, finances, and obligations to the people that they insure.").) AlexSam's own exhibits clearly show that it is Aetna Inc.'s subsidiary companies—not Aetna Inc.—that are licensed to conduct insurance business. (*See* Appx0572.)

Even these non-defendant subsidiaries have a limited nexus to the accused systems. There is no allegation that these health insurers are making or using [2] a

[2] Although the SAC parrots the statutory language "ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises the Accused Products," (Appx0477 ¶¶ 107–108), AlexSam's brief before this Court discusses only making or using the claimed invention, and therefore other potential bases for liability have been abandoned.

multifunction card system. As AlexSam's own exhibits show, many other independent companies are much closer to the accused systems. AlexSam's exhibits show that employers such as Johnson & Johnson and the University of Miami buy group health insurance for their employees. (Appx2464–2465.) These employers also choose to offer employees the option to enroll in a tax-advantaged healthcare account like an HSA, FSA, or HRA, and they contract with third-party administrators ("TPAs") like HealthEquity, WageWorks or PayFlex to administer those benefit plans. (*Id.*) Employees who choose to enroll have the option to pay for medications or medical services from pharmacies or physicians with a special-purpose debit card connected to their HSA, FSA, or HRA. (*Id.*) Those debit cards are issued by banks like Bank of America and Elan Financial Services. They operate across networks operated by Visa or MasterCard. They are swiped at retail point of sale devices operated by, for example, healthcare providers. (*Id.*)

In light of AlexSam's own allegations and exhibits detailing the actual involvement of **other** companies, it is implausible to infer that Aetna Inc. is responsible for the alleged infringement. The logic of the Latin maxim *expressio unius est exclusio alterius* is instructive in considering the voluminous exhibits AlexSam has chosen to attach to its complaint. The wealth of facts regarding the actions of others, coupled with the absence of any facts regarding Aetna Inc., lead to the conclusion that Aetna Inc. is not involved.

### 2. AlexSam Repeatedly Failed to Allege Facts Supporting A Claim of Infringement by This Holding Company.

AlexSam's boilerplate infringement allegations do not specify what Aetna Inc. has allegedly done, or why Aetna Inc. is liable for third-parties' conduct. If AlexSam's SAC had not included details about the roles played by other companies—such as Bank of America, JPMorgan Chase, WageWorks, HealthEquity, Visa, and MasterCard—perhaps AlexSam could have gotten away with generically alleging that Aetna Inc. and its subsidiaries are responsible for everything. But having incorporated a wealth of contrary information into the SAC—and having limited its allegations to the parent holding company alone—AlexSam has nudged its own allegations further from any "presumption of truth."

Further underscoring AlexSam's plausibility problem is its choice to simultaneously sue two of these unrelated entities—WageWorks and HealthEquity—for infringing the same claims of the same patent with the same alleged systems based on nearly verbatim allegations. (*See* Complaint, *AlexSam, Inc. v. WageWorks, Inc.*, No. 3:19-cv-4538-EMC (N.D. Cal. Aug. 2, 2019), ECF No. 1; Complaint, *AlexSam, Inc. v. HealthEquity, Inc.*, No. 2:19-cv-00445-HCN-CMR (D. Utah Jun. 26, 2019), ECF No. 2.) In those cases, AlexSam alleges that WageWorks and HealthEquity, as TPAs that administer tax-advantaged healthcare accounts—including some that are at issue here—are responsible for making, using, selling and offering for sale the very same multifunction card systems that

AlexSam claims here are Aetna Inc.'s legal responsibility. AlexSam offers no allegations to fill the plausibility gap its carpet bombing pleading strategy has created.

Nor does the SAC allege facts that would justify imposing vicarious liability on Aetna Inc. for the actions of others. Courts are rightfully loath to disregard the corporate form separating the liability or actions of one company from those of another company. *See, e.g., Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 552 (Fed. Cir. 1990) (recognizing "the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception" and emphasizing that "unless there is at least 'specific intent to escape liability for a specific tort the cause of justice does not require disregarding the corporate entity'") (quoting *Zubik v. Zubik*, 384 F.2d 267, 273 (3d Cir.1967), *cert. denied*, 390 U.S. 988 (1968)); *see also United States v. Best Foods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries."); *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 361 F. Supp. 2d 210, 217 (S.D.N.Y. 2005) (holding that a patentee could not bring suit against a corporate parent for the alleged acts of a subsidiary absent corporate veil piercing). Not only did AlexSam fail to allege alter ego liability, it failed to allege any facts to justify disregarding the corporate form; e.g., inadequate capitalization,

domination of day-to-day business decisions, intermingled accounts, lack of corporate formalities, or the use of the corporate form to commit fraud. *Botwinick v. Credit Exchange, Inc.,* 213 A.2d 349, 353–354 (Pa. 1965) ("Neither the similarity of names between the parent and subsidiary corporation, nor the total ownership of the stock of the subsidiary by the parent . . . justify a court in piercing the corporate veil . . . .").

At oral argument, AlexSam recognized the separateness of Aetna Inc. and PayFlex: "PayFlex, we certainly can do that. We can go to Omaha and sue in Omaha. . . . That is the solution. We could do that." (Appx2499 (49:12–15).); *see Botwinick,* 213 A.2d at 70 (among facts militating against piercing the veil would be that "each corporation is registered and incorporated in a different state . . . .").

AlexSam does not dispute that its SAC failed to allege facts to support either alter ego or agency theories of liability. AlexSam therefore needed to allege facts showing that Aetna Inc. itself infringed the asserted claims. As is discussed below, however, AlexSam's conclusory allegations of direct and indirect infringement against Aetna Inc. were properly dismissed.

### B. AlexSam Fails to Plead The Necessary Facts to Establish Any of Its Infringement Theories.

In contrast to the many claims asserted in the SAC, AlexSam limits its claims on appeal, accusing Aetna Inc. of direct infringement by "making" or

"using" the Accused Products[3] and indirect infringement by inducing or contributing to "customers'" use of the Accused Products. Even as to the narrower claims of direct and indirect infringement based on "making" or "using," the claimed system, the SAC fails to provide Aetna Inc. "notice of what activity . . . is being accused of infringement." *Bot M8,* 4 F.4th at 1352.

AlexSam fails to plead allegations of fact commensurate with the "complexity of the technology" and the "nature of the allegedly infringing device." (*Id.* at 1353.) The claimed "multifunction card system" in independent Claim 32 and dependent Claim 33 comprises multiple components, including "at least one debit/medical services card," "a transaction processor receiving card data from an unmodified existing standard point-of-sale device," "a processing hub," and two "databases." Thus, the claimed "multifunction card system" requires components or services provided by multiple actors. As discussed, the SAC and its exhibits link numerous third parties (e.g., Health Equity, Bank of America, VISA, MasterCard, PayFlex, and "customers") to different and various aspects of the accused systems. (*See, e.g.*, Appx0549.) Further, none of the cases AlexSam cites involve a non-operating accused infringer that, as here, challenged the plausibility

[3] (AlexSam Br. at 32.) In its brief, AlexSam cites only to paragraphs of the SAC pertaining to the Accused Visa Products in regard to its allegations of direct infringement by Aetna Inc. (AlexSam Br. at 33–34.)

of the allegation that it played a role in the provision or use of the allegedly infringing system.

1. There Is No Plausible Allegation of An "Unmodified Existing Standard Point-of-Sale Device"

AlexSam provides multiple allegations reciting an essential element of its '608 Patent to be "*an unmodified existing standard point-of-sale device*." (*See* Appx0463 ¶ 27 ("The primary innovative feature offered by '608 Patent was to introduce a Processing Hub that . . . allows these specialized [multi-card transactions] to be performed on an existing unmodified POS device . . . ."); Appx0466 ¶ 37 (reciting the "unmodified pre-existing standard point-of-sale device"); *Id.* ¶ 39 (referring to Claims 32 and 33 making "qualified medical purchases over a banking network using an unmodified POS device.").) Further, the SAC criticizes other multifunction card systems for not using an unmodified POS device. (Appx0461–462 ¶¶ 23–24.) The "unmodified existing standard point-of-sale device" (the "unmodified POS") is "material[ ]" to "practicing the asserted claim(s)." *Bot M8*, 4 F.4th at 1353.

What AlexSam does not do, however, is allege that Aetna Inc. actually uses an unmodified point-of-sale device. That omission is fatal to AlexSam's case. Vague and generalized allegations are as close as AlexSam comes to any allegation on this essential element. (*See* Appx0477 ¶ 109; Appx0482 ¶ 129 ("Defendant owns, operates, or leases all equipment in the infringing system . . ."); Appx0479

¶ 115 ("by providing the hardware and/or software necessary for its customers to make or use the infringing multifunction card system."); Appx0483 ¶ 136 ("by providing and supporting the Mastercard Accused Products and instructing customers on how to use them in an infringing manner.").) Mere allegations that "[t]he [Accused Products] can be used anywhere that [Visa / MasterCard] is accepted," (Appx0541, Appx0637), neither "raise a right to relief above the speculative level" nor provide Aetna Inc. "fair notice of what the . . . claim is and the grounds upon which it rests." *Bot M8*, 4 F.4th at 1353.

Perhaps explaining the absence of this necessary allegation is the fact that AlexSam cannot allege it. While AlexSam does not need to prove, on a motion to dismiss, that there has been no modification to a POS device, AlexSam must allege this essential element. And it has failed to do so.

In *AlexSam, Inc. v. IDT Corp.*, 715 F.3d 1336 (Fed. Cir. 2013), this Court addressed the need for and meaning of an "unmodified existing standard retail point-of-sale device," holding that "AlexSam needed to prove *both* that [the accused system] made use of terminals 'of the type in use as of July 10, 1997,' *and also* that those terminals 'ha[d] not been *reprogrammed, customized, or otherwise altered* with respect to [their] software . . . for use in the card system." *IDT* at 1341. With regard to Claims 32 and 33 of the '608 Patent, the United States District Court for the Eastern District of Texas held that the unmodified POS

element required "a terminal for making purchases of the type in use as of July 10, 1997, and that has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware for use in the card system." *AlexSam, Inc. v. Cigna Corp.*, No. 2:20-cv-00081-JRG-RSP, 2021 WL 1561606, at *32 (E.D. Tex. Apr. 20, 2021); *AlexSam, Inc. v. Humana, Inc.*, C.A. No. 2:07-cv-288, 2009 WL 2843333, at *4 (E.D. Tex. Aug. 28, 2009); *AlexSam, Inc. v. Datastream Card Services Ltd.*, No. 2:03-cv-00337-TJW, 2005 WL 6220095, at *5 (E.D. Tex. Jun. 10, 2005).

An "infringing system" cannot exist absent an unmodified POS device. Yet the SAC fails to make any non-conclusory allegations regarding the unmodified POS device limitation. (*See* Appx0480 ¶ 121, Appx0485 ¶ 141; Appx0541 & Appx0637 (infringement charts referring to "an unmodified existing standard point-of-sale device.").) On its face, it is not plausible that Aetna Inc. or its alleged "customers" would "use" an unmodified POS device (i.e., "of the type in use as of July 10, 1997, that has not been reprogrammed, customized, or otherwise altered . . .") between June 28, 2013 (the date that is six years before the filing date of the Complaint) and July 10, 2017 (the date the '608 Patent expired).[4] *See also AlexSam, Inc. v. Cigna Corp.*, No. 2:20-cv-00081-RWS-RSP, 2022 WL 807995, at

[4] Aetna Inc. disputes that AlexSam had provided adequate notice of any alleged infringement before the filing date of the original Complaint.

*3 (E.D. Tex. Mar. 16, 2022) (granting summary judgment where the accused systems did not utilize unmodified retail point-of-sale devices). Even if AlexSam were to point to some generalized allegation, the need for further factual enhancement is particularly acute where AlexSam has been unable to identify any party using an unmodified POS device in its other litigations.

2. AlexSam Fails to Plausibly Allege That Aetna Inc. Directly Infringes by "Using" or "Making" the Claimed System

Although the SAC alleged a whole host of different theories of infringement and liability, in its brief, AlexSam argues only that Aetna Inc. directly infringes by "using" or "making" the Accused Products. The SAC does not plausibly allege direct infringement under either theory. For example, it alleges that "Defendant owns, operates, or leases all equipment in the infringing system, or alternatively exercises direction and control over the operation of all equipment in the infringing system in order to provide the benefit of debit/medical card services to its customers," (Appx0477 ¶ 109), and that "[u]pon information and belief, Defendant employs staff (e.g., an IT department) to operate the Processing Hub in order to interface with, install, configure, manage, monitor, test, and control the debit/medical services cards and other equipment in the infringing multifunction card system," (Appx0478 ¶ 110.) As in *Iqbal*, "[i]t is the conclusory nature of [AlexSam's] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." 556 U.S. at 681. Such generic

allegations fail to state a viable infringement claim and fail to provide Aetna Inc. notice of its allegedly infringing activity.

a. "Uses"

To state an infringing "use," AlexSam must plausibly allege that Aetna Inc. both "control[led[" and "obtained benefit from each and every element of the claimed system." *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017). The "control required is the ability to place the system as a whole into service." (*Id*. (internal quotation omitted).)

AlexSam's allegations fail to provide notice of any specific activity of Aetna Inc. that would control and derive a benefit from each element of the claimed system. For example, the notion that the non-operating corporate parent, Aetna Inc., "owns, operates, or leases," a point-of-sale device—let alone an unmodified point-of-sale device from 1997—is absurd on its face. These are the types of devices that are commonly seen at merchants' stores, pharmacies, and medical offices—not at holding company corporate offices. In addition, it is implausible that Aetna Inc. itself would be testing, installing, or configuring a system, or a component thereof, that is "administered" or "issued" by a third party as the exhibits to the SAC set forth.

AlexSam also failed to allege a "benefit" arising from Aetna Inc.'s "use" of each and every element of each accused system. *See Grecia v. McDonald's Corp.*,

724 Fed. Appx. 942, 947 (Fed. Cir. 2018) (affirming dismissal of complaint where allegations recited only "general benefits"). AlexSam baldly asserts that Aetna Inc. "is in the business of selling and offering for sale the [Accused Products] to its customers," (Appx0112 ¶ 59), "sell[s] products generated through the use of the system," or "receives revenue from the provision of, sale, and use of the [Accused Products]," (Appx0483 ¶¶ 133, 136). As discussed above, AlexSam's own exhibits show other entities provided the health insurance, debit cards, benefit accounts, and card networks at issue—not Aetna Inc. Moreover, none of these alleged "benefits" would flow from Aetna Inc.'s alleged "use" of the accused systems as a whole (e.g., testing) as opposed to a third party's later "use." Nor do any of the allegations specify how Aetna Inc. would itself benefit from its "use" of each and every limitation of Claims 32 and 33, including, for example, an unmodified POS device. *Intellectual Ventures*, 870 F.3d at 1331 (patentee "has never identified any benefit flowing to [the manufacturer] above and beyond that which would flow to its customers due to the manufacturer's testing."). This omission makes AlexSam's allegations of Aetna Inc.'s infringing "use" of the accused systems implausible.

b. "Makes"

AlexSam's contention that Aetna Inc. is the "final assembler" of any of the accused systems is a new theory that was not pled in the SAC and not raised in the

District Court. Accordingly, AlexSam's argument has been waived. *Stauffer v. Brooks Bros. Grp., Inc.*, 758 F.3d 1314, 1322 (Fed. Cir. 2014) ("Issues not properly raised before the district court are waived on appeal.").

Even if it had not been waived, the SAC does not plausibly allege that Aetna Inc. "makes" an infringing system. AlexSam relies on this Court's decision in *Centrak, Inc. v. Sonitor Technologies, Inc.*, 915 F.3d 1360 (Fed. Cir. 2019). In *Centrak*, however, the patentee alleged that the accused infringer's personnel traveled to a customer's location and implemented the equipment positioning system by uploading sensor data to the server. (*Id.* at 1373.) In other words, such personnel "completed" the system.

Here, no similar facts have been alleged. AlexSam simply concludes that Aetna Inc. "installs" or "configures" a component—the processing hub—that is used in a transaction. (Appx0112–113 ¶ 61.) This does not plausibly allege a "completion" of the claimed system. For example, an "infringing system" would only have existed, if ever, when "a transaction processor receiv[es] card data from an unmodified existing standard point of sale device." Unlike in *Centrak*, AlexSam has not made any allegation that Aetna Inc. ever possessed all of the hardware and software to complete the system. Nor is it plausibly alleged that Aetna Inc. provides a "complete" system to customers. *See Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1368 (Fed. Cir. 2021). Indeed, AlexSam's

own exhibits to the SAC point to other entities having roles in the accused systems, without identifying any role for Aetna Inc. (*See, e.g.*, Appx0549.) Accordingly, AlexSam's new "final assembler" theory is just as implausible as all of its past theories.

### 3. AlexSam Fails to Plausibly Allege That Aetna Inc. Indirectly Infringes

AlexSam alleges that Aetna Inc. induces or contributes to its supposed customers' infringing "use" of the claimed system. AlexSam has failed to set forth, however, any non-conclusory facts showing that Aetna Inc. even had customers. Moreover, AlexSam has not offered any allegation whatsoever that "customers" made, for example, "use" of an unmodified POS device. Even if it could plausibly allege such nonexistent facts, AlexSam has failed to allege that Aetna Inc. had knowledge of "customers" direct infringement, or specific intent to cause such infringement. Equally implausibly are AlexSam's generic allegations that Aetna Inc. provides a "processing hub" that has no substantial noninfringing uses.

#### a. There Are No Facts Supporting The Conclusory Allegation That Aetna Inc. Has Customers.

Although the SAC refers to Aetna Inc.'s "customers," there is no factual allegation supporting the assumption that Aetna Inc. has customers. AlexSam's exhibits show that Aetna Inc.'s insurance company subsidiaries sell group health

insurance for employees of identified customers such as Johnson & Johnson and the University of Miami. (Appx0549.) In contrast, AlexSam's exhibits do not show what product Aetna Inc. sells or who are its customers.

The closest AlexSam comes to an allegation of Aetna Inc. selling something is really more of a card trick than an allegation of fact: "Defendant [Aetna Inc.] offers the PayFlex Card through its subsidiary, PayFlex." (Appx0284 ¶ 54, Appx0469 ¶ 55.) That allegation identifies PayFlex as the real provider of the card service, not Aetna Inc. And, as discussed below, AlexSam failed to allege agency or alter ego facts that would warrant disregarding the corporate structure. As the District Court clearly explained, AlexSam did nothing more than recite the language of the statute and repeat the elements of its patented system, and then offered the conclusion that Aetna Inc. must have infringed by selling to unspecified customers. This is exactly the type of conclusory and formulaic pleading rejected by the Supreme Court in *Iqbal*.

#### b. The SAC Fails to Plausibly Allege Pre-suit Knowledge of and Specific Intent to Cause a Direct Infringement

To state claim for indirect infringement of Claims 32 or 33 of the '608 Patent, AlexSam must plausibly allege that Aetna Inc. possessed "knowledge of the underlying direct infringement—not merely the knowledge of the existence of the patent." *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1364 (Fed. Cir. 2016). Here, the SAC fails to allege facts showing that Aetna Inc. knew of each

Accused Product let alone that any third party's use of the same would infringe the asserted claims.

AlexSam alleges that it sent a letter to Aetna Inc. in June 2015. (*See* Appx0479 ¶ 116.) In that letter, which is attached to the SAC, AlexSam stated only: "Based on publicly-available information, we believe that at least the following products require a license under the '608 Patent: Aetna Health Care FSA Debit Card and Aetna HSA Visa Debit Card." (Appx0640.) The June 2015 letter to Aetna Inc. did not identify any of the Accused Visa Products—namely, the JPMC Visa Debit Card, the Bank of America Visa Debit Card, the Health Equity Visa Debit Card, and the WageWorks Visa Card—the only alleged bases for infringement involving Visa that are pled in the SAC. The letter did not identify Claims 32 or 33, or any of the 66 claims of the '608 Patent. Nor did the letter identify any act of Aetna Inc. that induced or contributed to another's infringement. Significantly, as discussed below with regard to the MasterCard License (*infra* at 45–53), AlexSam's letters made no mention of any infringement with regard to MasterCard cards, only Visa cards.

Moreover, as this Court set forth in *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1331 (Fed. Cir. 2010), to establish induced infringement, the patent holder must allege that the defendant "induced the infringing acts and knew or should have known that its actions would induce actual infringement." Here, there are no

factual allegations of specific encouragement or instruction to use the claimed "transaction processor," a "first database," a "second database" or "an unmodified existing point of sale device."

The attachments to the SAC show that various subsidiaries provided health insurance to consumers; but they do not show that Aetna Inc. provided any specific instruction or encouragement to practice Claims 32 or 33 of the '608 Patent. AlexSam's generic allegations based on websites and marketing materials do not state a claim. *See, e.g., DoDots Licensing Solutions LLC v. Lenovo Holding Co*., No. 18-098 (MN), 2018 WL 6629709, at *4 (D. Del. Dec. 19, 2018) ("Although Plaintiff cites Defendants' website as support for its allegation, it does so generically and does not identify any particular statement or material that plausibly suggests Defendants intend to induce infringement."); *IP Communication Solutions, LLC v. Viber Media (USA), Inc.*, No. 16-134-GMS, 2017 WL 1312942, at *4 (D. Del. Apr. 5, 2017) (dismissing inducement claim and describing need for detailed explanation in marketing materials to show specific intent element).

c. There Are No Plausible Allegations of Aetna Inc.'s Provision of A Processing Hub or Multifunction Card.

Each of AlexSam's theories of indirect infringement requires that Aetna Inc. provide a "processing hub." Yet there is no "factual enhancement" of AlexSam's "bare assertion" that Aetna Inc. provides a "processing hub," or any other equipment. According to the SAC (Appx0463 ¶ 27), the processing hub "operates

as a compatible component of a banking network" and "allows these specialized functions to be performed on an existing unmodified POS device," without interfering "with normal debit/credit card functions for purchasing of goods and services at any merchant POS device." Paragraph 28 of the SAC identifies "a new Processing Hub within a banking network . . . ." (Appx0463.)

But the conclusory allegations attempting to tie Aetna Inc. to providing this "primary innovative feature offered by the '608 Patent," (*Id.*), are woefully inadequate:

- "Upon information and belief, Defendant employs staff (e.g., an IT department) to operate the Processing Hub in order to interface with, install, configure, manage, monitor, test, and control the debit/medical services cards and other equipment in the infringing multifunction card system." (Appx0478; Appx0482.)
- "Acts by Defendant that contribute to the infringement of these customers include providing the Processing Hub, which is capable of authorizing, approving, and declining payments at healthcare providers and pharmacies for eligible services, goods, and prescriptions." (Appx0479; Appx0484.)
- "Acts by Defendant that contribute to the infringement of these retailers include providing the POS devices and bank Processing Hub computers which are capable of initiating the activation and loyalty point crediting processes." (Appx0480; Appx0485.)

AlexSam's own exhibits contradict these conclusory allegations and show that unaffiliated companies—not Aetna Inc.—"provid[e]," "operate," or "administer []" the accused systems or components thereof:

- "**HealthEquity . . . is the administrator** of your Aetna HealthFund HSA." (Appx0572 (emphasis added).)
- "If you participate in both the Aetna HRA medical plan and a health care FSA, **you will receive one WageWorks Visa card** with both HRA and FSA funds on the card." (Appx0608 (emphasis added).)
- "The HSA is a tax-favored account set up for you by the Company [Johnson & Johnson] and **administered by Bank of America**." (Appx0548 (emphasis added).)
- "**This card is issued by Bank of America** N.A. pursuant to a license from Visa U.S.A. Inc." (Appx0549 (emphasis added).)
- "Health Savings Accounts **are administered by JPMorgan Chase Bank**, N.A. Member FDIC." (Appx0570 (emphasis added).)

AlexSam's allegations further require that the accused systems "use" the VISA or MasterCard networks. ('608 Patent, col. 15, ll. 65–col. 16, ll. 2 ("for use in a banking network.").)

It might therefore be plausible to allege that one or more of these companies was responsible for a component that "transmits and processes these non-standard transactions **on that banking network** in a manner that is transparent to existing institutions, components, or transactions on the network." (Appx0534 ¶ 93 (emphasis added); *see also* Appx0485 ¶ 141 (referring to "bank Processing Hub computers"); Appx0469 ¶ 53 (referring to the PayFlex "technology platform").) But AlexSam has chosen not to make such an allegation in this case. And in contrast to the allegations and exhibits detailing the roles of other actors such as banks, third-party-administrators, and financial networks, AlexSam's exhibits fail

to provide the "factual enhancement" to make AlexSam's "bare assertions" plausible allegations against Aetna Inc.

d. AlexSam's Allegations That a "Processing Hub" Has No Substantial Noninfringing Uses Are Implausible

AlexSam's attempt to plead contributory infringement fares no better. AlexSam has not plausibly alleged that Aetna Inc. provides a "processing hub" which "has no substantial noninfringing uses," and that this was known by Aetna Inc. to be "especially made or especially adapted for use in an infringement of such patent." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012) (citing 35 U.S.C. § 271(c)).

AlexSam alleges that Aetna Inc. provides a "processing hub" for use in an infringing system. (AlexSam Br. at 26 (citing Appx0479–480 ¶ 118 & Appx0484 ¶ 138).) But the '608 Patent states that "[t]he processing hub can be implemented using any computer having acceptable processing and storage capacity." ('608 Patent, col. 11, ll. 1-3.) As the District Court agreed, "it is implausible that 'any computer' has no substantial noninfringing uses." (Appx0037.) Further, there is no plausible allegation that "any computer" is incapable of performing any other type of function, including processing data obtained from a **modified** point-of-sale device. *See In re Bill of Lading*, 681 F.3d at 1339 (affirming dismissal of a contributory infringement claim where the complaint mad clear on its face that products do have substantial non-infringing uses).

### C. AlexSam's Allegations of Infringement of The "Transparent" System Patent Are Conclusory and Unenhanced by Necessary Factual Details.

There is a further distance between AlexSam's formulaic allegations of infringement by Aetna Inc. and the detail required to state a plausible claim. This is not a case where there is a tangible physical product that the accused infringer could readily compare to the patent claims to evaluate the alleged infringement. AlexSam's liability theory appears to be a simple syllogism: any card system that can access funds in an FSA, HRA, or HSA must infringe; the accused card systems can access funds in an FSA, HRA, or HSA; thus, the accused card systems must infringe. Not only is this wrong as a matter of law—a card system that did not use an unmodified POS device, for example, would not infringe—it also utterly fails to provide Aetna Inc. fair "notice of what activity . . . is being accused of infringement." *Bot M8*, 4 F.4th at 1352.

In essence, AlexSam has recited the elements of its '608 Patent, and then alleged that Aetna Inc. makes or uses such a system. A patentee "cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.* at 1353. Here, AlexSam has not plausibly alleged that the accused systems infringe the '608

Patent; and it has not plausibly alleged that Aetna Inc. is legally responsible for the accused systems. Consequently, there is no factual articulation of how Aetna Inc. supposedly infringes the asserted claims.

## IV. ALEXSAM'S MASTERCARD INFRINGEMENT CLAIM IS ALSO IMPLAUSIBLE IN LIGHT OF THE AMPL

AlexSam's claim that the accused system involving the PayFlex MasterCard infringes Claim 33[5] of the '608 Patent fails for an additional reason. As the District Court properly recognized, AlexSam entered into a broad license with MasterCard—the AMPL—covering the entire value chain whenever a MasterCard product functioned as an information card. In later litigation with MasterCard, AlexSam specifically identified Claims 32 and 33 as reciting activity that would be covered under the AMPL. This leaves only two possibilities—either a system involving the PayFlex MasterCard practices Claim 33 and is therefore licensed under the AMPL, or it does not practice Claim 33 and thus does not infringe. Either way, AlexSam's infringement claim is implausible with respect to the PayFlex MasterCard.

[5] Claim 33 states, in its entirety: "The multifunction card system of claim 32, wherein the unique identification number further comprises a medical identification number."

### A. AlexSam Expressly Alleges That Aetna Inc. Participates in Activation Processes That AlexSam Admits Are Licensed.

AlexSam and MasterCard entered into the AMPL in 2005. Section 1.1 of the AMPL identifies the "Licensed Patents" as expressly including "the '608 patent . . . ." (Appx0655 § 1.1.) Section 2.1, entitled "License," grants broad license and sublicense rights to the claims of the '608 Patent:

> AlexSam hereby grants to MasterCard a . . . license . . . to process and enable others to process Licensed Transactions. The license granted under this Section 2.1 includes the right of MasterCard to grant sub-licenses under the Licensed Patents co-extensive in scope to the scope of the license granted . . . . Unless otherwise sublicensed as permitted hereunder, all Licensed Transactions shall be deemed sublicensed under an implied sublicense granted hereunder to all participating parties.

(Appx0657.) Section 1.3 defines a "Licensed Transaction" as including:

> [E]ach process of activating or adding value to an account or subaccount which is associated with a transaction that utilizes MasterCard's network **or brands** wherein data is transmitted between a **POI Device** and MasterCard's financial network or reversing such process, provided that such process is covered by one of the Licensed Patents. Such Licensed Transaction includes the entire value chain **and all parts of the transaction** and may involve other parties including but not limited to: issuing banks, acquiring banks, processors, merchants, card vendors and third party marketing firms. To the extent that these other parties participate in a Licensed Transaction, they will also be licensed under this Agreement, but only to the extent of such parties' participation in a Licensed Transaction.

(Appx0656 (emphasis added).) AlexSam's Expert Declaration, attached to the SAC as Exhibit B, (Appx0508), emphasized that even the "non-standard transactions" involving the exchange of medical information use the banking network (in this case, the MasterCard network): "And most importantly, this new, novel and inventive architecture transmits and processes these non-standard transactions on that banking network in a manner that is transparent to existing institutions, components, or transactions on the network." (Appx0534 ¶ 93.)

On appeal, AlexSam emphasizes that the original AMPL language focused on processes of "activating or adding value to an account or subaccount." (*See, e.g.*, AlexSam Br. at 40–43.) It argues that a system must "participate in a 'process of activating or adding value to an account or subaccount which is associated with a transaction which utilizes MasterCard's network or brands'" in order to be licensed under the AMPL. (*Id.* at 40.)

But AlexSam expressly alleges that Aetna Inc. is responsible for activation transactions over the MasterCard network: "Defendant contributes to the infringement of claim 33 by its customers, providers and/or retailers. Acts by Defendant that contribute to the infringement of these retailers include providing the POS devices and bank Processing Hub computers **which are capable of initiating the activation** and loyalty point crediting **processes**." (Appx0485 ¶ 141

(emphasis added).) AlexSam thus again pleads itself out of court, this time by alleging that Aetna Inc. provides POS devices capable of initiating the activation process while also admitting that the AMPL covers the activation process. As this Court observed in *Bot M8*, "[w]here, as here, the factual allegations are actually inconsistent with and contradict infringement, they are likewise insufficient to state a plausible claim." (4 F.4th at 1354.)

If AlexSam alleges that Aetna Inc. infringed as to MasterCard use, then such use is protected by the MasterCard license. In *AlexSam, Inc. v. IDT Corp.*, this Court confirmed that the AMPL covers accused transactions carried out over the MasterCard financial network, holding that "Licensed Transactions" include "**the entire value chain and all parts of the transaction** and may involve other parties . . . ." 715 F.3d 1336, 1346 (Fed. Cir. 2013) (emphasis added). This Court quoted and applied the AMPL's broad sublicense provision: "Unless otherwise sublicensed as permitted hereunder, all Licensed Transactions shall be deemed sublicensed under an implied sublicense granted hereunder to all participating parties." (*Id.*) Therefore, if Aetna Inc. is somehow involved with an infringing system that operates over the MasterCard network, it is sublicensed as part of the value chain. Likewise, an insured who uses a MasterCard health debit card as well as its insurer and TPA are protected from a claim of infringement if they practice Claim 33, as AlexSam alleges they do.

### B. AlexSam Ignores The Amendment That Significantly Broadened The AMPL.

In arguing that the scope of the AMPL is confined to transactions that activate or add value, AlexSam ignores the 2007 amendment to the AMPL which broadened the definition of a Licensed Transaction "to further encompass each process of exchanging information related to an information card between a POI [Point of Information] Device and MasterCard's financial network, provided that such process is covered by one of the Licensed Patents." (Appx0675.)

AlexSam knows this. In 2015, AlexSam filed a lawsuit in the United States District Court for the Eastern District of New York alleging that MasterCard breached the AMPL by failing to make royalty payments. (See Original Compl. Breach of Contract ¶ 1, *AlexSam, Inc. v. MasterCard Int'l, Inc.*, No. 1:15-cv-2799-ILG-VMS (E.D.N.Y. May 14, 2015), ECF No. 1.) In a declaration submitted to the court in that litigation, AlexSam's founder and CEO, Mr. Dorf, explained that the AMPL was intended to be "very expansive" and that it "encompassed MasterCard's commercial partners" throughout the "entire value chain . . . ." (Appx0834–835 ¶ 26.) To eliminate any doubt, Mr. Dorf explained that the term "'entire value chain' was also included in the definition of a Licensed Transaction" to extend the reach of the AMPL to all of MasterCard's "commercial partners who were included in **each step** of the Licensed Transaction whether they directly **or indirectly participated**." (*Id.* ¶ 29 (emphasis added).) And AlexSam's Mr. Dorf

"agreed" with MasterCard that the "contract would cover all participants who might use MasterCard [sic] **in some way**." (*Id.* ¶ 16 (emphasis added).)[6]

AlexSam does not even acknowledge the amendment to the AMPL, let alone address its admissions in the MasterCard case about the breadth of that amendment. The amended AMPL plainly covers activity that practices Claim 33 across the MasterCard network, as the PayFlex MasterCard is alleged to do. Reflecting the impact of the AMPL, AlexSam did not identify any MasterCard products in its 2015 Notice Letters to Aetna Inc. and PayFlex Holdings, Inc. (*See* Appx0640 ("Aetna HSA Visa Debit Card"); Appx0645 ("HSA Visa Debit Card").) AlexSam's original complaint in this case—as well as its contemporaneous complaints against HealthEquity and WageWorks—expressly disclaimed any infringement claim involving a MasterCard product. (*Compare* Appx0111 ¶ 51 n.1 with Complaint ¶ 51 n.1, *AlexSam, Inc. v. HealthEquity, Inc.,* No. 2:19-cv-445-HCN-CMR (D. Utah June 26, 2019), ECF No. 2 and Complaint, ¶¶ 50–51, *AlexSam, Inc. v. WageWorks, Inc.*, No. 3:19-cv-4538-EMC, (N.D. Cal. Aug. 2,

---

[6] The district court in the *MasterCard* case subsequently granted summary judgment on judicial estoppel grounds, which this Court reversed. *See AlexSam, Inc. v. MasterCard Int'l, Inc.*, No. 1:15-cv-2799-ILG-SMG, 2020 WL 3286785 (E.D.N.Y. June 17, 2020), *rev'd* 2022 WL 621374 (Fed. Cir. Mar. 3, 2022). On remand, the district court granted summary judgment on other grounds, *see AlexSam, Inc. v. MasterCard Int'l, Inc.*, No. 1:15-cv-2799-ILG-SMG, 2022 WL 2541433 (E.D.N.Y. July 7, 2022), which AlexSam has appealed to this Court in Appeal No. 2022-2046.

2019), ECF No. 1.) AlexSam later reversed course and alleged infringement involving MasterCard cards in its First Amended Complaint. (Appx0283 ¶ 49.) Then, in its SAC, AlexSam attached the AMPL as an exhibit and affirmatively alleged that the alleged infringement was not protected by the AMPL. (Appx0481 ¶ 123.) AlexSam's shifting arguments throughout the litigation further underscore the implausibility of its MasterCard infringement allegation.

### C. AlexSam Incorrectly Asserts That The Applicability of The AMPL Was An Affirmative Defense That Could Not Be Decided on A Motion to Dismiss.

AlexSam now complains that the District Court should not have made any ruling on the AMPL because, according to AlexSam, the existence of a license is an affirmative defense for which Aetna Inc. had the burden. (*See* AlexSam Br. at 39.) But AlexSam made the license part of its affirmative case by alleging that Aetna Inc. acted "without authority and/or license." (Appx0289 ¶ 76, Appx0481 ¶ 123, Appx0485 ¶ 143.) Beyond that, AlexSam affirmatively placed the AMPL and its amendment before the District Court as exhibits to its SAC. (Appx655–675.) Aetna Inc. therefore did not need to plead an affirmative defense for the District Court to consider the plausibility of AlexSam's allegation.

The District Court carefully reviewed AlexSam's pleading and the documents it attached. Applying New York contract law principles, the District Court properly considered whether it was plausible, in light of the language of the

agreement that AlexSam had placed before it, that an accused MasterCard system could infringe Claim 33 without being licensed. *See Intellectual Ventures I LLC v. Erie Indem. Co.,* 850 F.3d 1315, 1320 (Fed. Cir. 2017) (citing *Semitool, Inc. v. Dynamic Micro Sys. Semiconductor Equip. GmbH*, 444 F.3d 1337, 1341 (Fed. Cir. 2006)) ("We apply state law to contractual disputes and interpretations of the parties' patent assignment agreements." ). As the Second Circuit has recognized, "[c]ontractual claims unambiguously barred by an agreement between the parties may be determined on a motion to dismiss." *JN Contemporary Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 122 (2d Cir. 2022) (*citing Edwards v. Sequoia Fund, Inc.,* 938 F.3d 8, 13 (2d Cir. 2019)). And, critically, "[i]f the documents referenced in the complaint contradict the facts alleged by the plaintiff, the documents control and the court need not accept as true the plaintiff's allegations." *Olin Corp. v. E.I. Dupont De Nemours & Corp.,* No. 05-CV-100S(SC), 2006 WL 839415, at *1 (W.D.N.Y. Mar. 27, 2006) (*citing Feick v. Fleener*, 653 F.2d 69, 75 & n. 4 (2d Cir. 1981).

As Aetna Inc. argued before the District Court—and as the District Court held—if a system involving a MasterCard product practiced Claim 33 of the '608 Patent, then it necessarily was covered by the AMPL, (*see* Appx0746; Appx0018), as AlexSam construed that license in its submissions in the *MasterCard* case, (*see* Appx0895 n.2.) Conversely, if the system did not practice the '608 Patent, then it

would not be licensed—but it also would not support a claim of infringement. Either way, AlexSam could not assert a plausible claim for infringement for an accused system involving a MasterCard card. *See Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (*citing Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569, (2002)). AlexSam offers no reason to hold otherwise.

### D. AlexSam Waived Its MasterCard Infringement Claim By Seeking Leave to Delete It.

This Court need not consider the sufficiency of AlexSam's infringement allegations concerning accused systems that operate over the MasterCard network because AlexSam has abandoned that claim. Following the Court's order dismissing the SAC, AlexSam twice sought leave to amend its pleading. Recognizing the impact of the AMPL, AlexSam's proposed amended complaints included "the removal of all claims relating to the MasterCard Network." (Appx0066–67; Appx0067 n.10 (where the District Court identified the removal of those allegations based on the Redlined version of the Proposed Third Amended Complaint).) By choosing to remove any further claim regarding accused systems operating over the MasterCard network, AlexSam removed that issue from further consideration on appeal. *See Allen v. N.Y.C. Hous. Auth.,* No. 10 CIV. 168 (CM) (DF), 2012 WL 4794590, at *4 (S.D.N.Y. Sept. 11, 2012) ("A party may voluntarily drop claims by choosing not to include them in a proposed amended

pleading. In such a circumstance, it is appropriate for the Court to dismiss the abandoned claims with prejudice.").

## V. ALEXSAM FAILED TO SHOW GOOD CAUSE FOR ITS FAILURE TO TIMELY ADD AETNA LIFE OR PAYFLEX AS DEFENDANTS.

On appeal, AlexSam has chosen not to challenge the District Court's denial of its post-dismissal motions for leave to amend—including multiple proposed Amended Complaints and an untimely attempt to add one of Aetna Inc.'s subsidiaries as a defendant. Apparently not wanting to have this Court consider its repeated inability to fashion a plausible infringement case against Aetna Inc., AlexSam offers this rationale: "In order to preserve Court and party resources by focusing on essential issues, Appellant is not challenging the Orders Denying Leave, and instead has focused on the Dismissal Order from which the remaining orders flowed." (AlexSam Br. at 9 n.4.) AlexSam has thus waived its right to challenge those decisions. *See Colony Grill Dev., LLC v. Colony Grill, Inc.*, No. 21-2136, 2022 WL 950950, at *2 (2d Cir. Mar. 30, 2022) (*citing Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006)) (arguments not pressed on appeal are waived.).

AlexSam, however, cannot force this Court to ignore the relevant history of AlexSam's pleading failures following the dismissal of the SAC without prejudice. From the outset, AlexSam could have—and should have—included allegations

naming PayFlex or the operating insurance company subsidiaries of Aetna Inc. if it believed they were infringing the ’608 Patent. But it did not do so. In dismissing the SAC without prejudice, the District Court provided AlexSam with a roadmap of the factual enhancement that was necessary to support AlexSam’s infringement allegations against the parent holding company. (Appx0047; *see also* Appx0001.) But AlexSam did not add that, either.

Instead, AlexSam filed a barrage of four motions and proposed additional complaints that failed to correct the problems the District Court had identified. In denying those motions, the District Court recognized that “where a party seeks leave to amend after the deadline to amend pleadings has passed, the Court has greater discretion to deny leave to amend.” (Appx0052 (citing *Lyddy v. Bridgeport Bd. of Educ.*, No. 3:06-CV-1420 (AHN), 2008 WL 5117679 (D. Conn. Dec. 4, 2008) & *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229 (2d Cir. 2007) & *Parker v. Columbia Pictures Indus.*, 204 F.3d 326 (2d Cir. 2000) & *Carnite v. Granada Hosp. Grp., Inc.*, 175 F.R.D. 439 (W.D.N.Y. 1997)).) The District Court noted that AlexSam failed to show “good cause” or “diligence” that might allow an amendment under Rule 16 after the time had elapsed under the scheduling order to add new parties or to amend pleadings. (Appx0066–72*; see also* Appx0070 (quoting, *Premier Comp. Solutions v. UPMC,* 970 F. 3d 316, 319 (3d Cir. Aug. 12, 2020)).)

In the Second Circuit, "a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause" under FRCP 16(b). *Parker*, 204 F.3d at 340; *Int'l Media Films, Inc. v. Lucas Entm't, Inc.,* No. 07 Civ. 1178(JGK)(FM), 2008 WL 781823, at *3 (S.D.N.Y. Mar. 20, 2008) ("[I]f a Rule 21 motion to add a party after the scheduling deadline did not have to meet the good cause requirement of Rule 16(b), the scheduling order would be rendered meaningless."); *Thomas v. ConAgra Foods*, *Inc.,* No. 620-CV-06239-EAW-MJP, 2022 WL 3699408, at *4 (W.D.N.Y. Aug. 26, 2022) ("[D]istrict courts throughout this Circuit enforce adherence to scheduling orders through application of Rule 16's good cause standard . . . ."); *see also John O Butler Co. v. Gillette Canada, Inc*., No. 91 C 7858, 1993 WL 45938, at *2 (N.D. Ill. 1993) (denying patentee's motion to add a subsidiary of named defendant because patent holder unreasonably delayed in attempting to add the subsidiary).

If AlexSam had appealed the District Court's rejection of its post-dismissal motions for leave to amend—which it did not—the District Court's exercise of its discretion under Rules 15 and 16 would have been reviewed for abuse of discretion. *See Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003) ("We review a district court's decision to grant or deny a party leave to amend a pleading under Federal Rule of Civil Procedure 15(a) for abuse of discretion.

Similarly, a scheduling order ruling under Federal Rule of Civil Procedure 16(b) is also reviewed for abuse of discretion.") (citations omitted). Instead, it chose to address only the initial dismissal, hoping that this Court would ignore the many chances it was given to cure its deficient pleading. AlexSam filed three separate proposed Third Amended Complaints. (*See* Appx1107–1149, Appx1522–1770, Appx1947–2226.) Leave to Amend was denied because AlexSam failed to cure the deficiencies the District Court had repeatedly told AlexSam to address. (*See* Appx0074.) The dismissal of its claims with prejudice should be affirmed.

## CONCLUSION

AlexSam has no problem providing detailed allegations of the elements of its '608 Patent. AlexSam fails, however, in providing any factual allegations of how this lone defendant, Aetna Inc., has taken actions that infringe that patent. Simply providing conclusory allegations of buying, selling, importing, or manufacturing are not enough. AlexSam's failure to affirmatively allege acts of infringement by Aetna Inc. is highlighted by the contradictory exhibits and allegations that show companies other than Aetna Inc. are involved in the licensed business of health insurance, the administration of health plans, and the provision of debit cards. Further, AlexSam has introduced its own license agreement with MasterCard, yet it is unable to articulate how that license fails to protect Aetna Inc.

from its claims of infringement—even implausible claims of infringement. For all the reasons stated herein, the judgment of the District Court should be affirmed.

Dated: March 17, 2023

Respectfully submitted,

*/s/ Thomas G. Rohback*

Thomas G. Rohback
Matthew S. Murphy
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
Tel.: (860) 275-8100
Fax.: (860) 275-8101
Email: trohback@axinn.com
mmurphy@axinn.com

*Attorneys for Aetna Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2022-2036

**Short Case Caption:** Alexsam, Inc. v. Aetna Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 13,157 words.
- [ ] the filing has been prepared using a monospaced typeface and includes __________ lines of text.
- [ ] the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 03/17/2023

Signature: /s/ Thomas G. Rohback

Name: Thomas G. Rohback