No. 2022-2046

# United States Court of Appeals for the Federal Circuit

ALEXSAM, INC.,
*Plaintiff-Appellant*

v.

AETNA INC.,
*Defendant-Appellee*

**Appeal From The United States District Court For The District of Connecticut in Case No. 3:19-cv-0010125-VAB Judge Victor A. Bolden.**

## ALEXSAM, INC.'S REPLY BRIEF

Jacqueline K. Burt
HENINGER GARRISON DAVIS, LLC
3621 Vinings Slope, Ste. 4320
Atlanta, Georgia 30339
Email: jburt@hgdlawfirm.com
Telephone: (404) 996-0861

Timothy C. Davis
HENINGER GARRISON DAVIS, LLC
2224 1st Avenue North
Birmingham, Alabama 35203
Email: tim@hgdlawfirm.com
Telephone: (205) 326-3336

Steven W. Ritcheson
INSIGHT PLC
578 Washington Blvd., #503
Marina del Rey, California 90292
Email: swritcheson@insightplc.com
Telephone: (818) 744-8714

W. Lee Gresham, III
HENINGER GARRISON DAVIS, LLC
2224 1st Avenue North
Birmingham, Alabama 35203
Email: lee@hgdlawfirm.com
Telephone: (205) 326-3336

*Attorneys for Plaintiff-Appellant, AlexSam, Inc.*

March 31, 2023

# CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellant, Alexsam, Inc., certifies the following:

1. The full name of every party or amicus represented by me is:

   **AlexSam, Inc. (Plaintiff-Appellant)**

2. The name of the real party in interest represented by me is: **None**.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me is: **None**.

4. The names of all law firms and the partners or associates that appeared for Alexsam, Inc. in the trial court or agency or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are:

   **Heninger Garrison Davis, LLC**

   1. **Travis Lynch**
   2. **Jonathan R. Miller**

5. Related Cases: *see* section entitled "Statement Of Related Cases"

6. Organizational Victims and Bankruptcy Cases: **None**.

Dates: March 31, 2023

Respectfully submitted,

*/s/ Jacqueline K. Burt*
Jacqueline K. Burt
*Attorney for Plaintiff-Appellant,*
*AlexSam, Inc.*

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, AlexSam provides as follows:

(a) There have been no previous appeals in this case.

(b) Seven (7) district court case(s) may be affected by the Court's decision in this case:

- *AlexSam, Inc. v. Mastercard International Inc.,* Case No. 1:15-cv-02799 (Eastern District of New York);

- *AlexSam, Inc. v. Cigna Corp.,* Case No. 2:20-cv-00081 (Eastern District of Texas);

- *AlexSam, Inc. v. Simon Property Group, et al.*, Case No. 2:19-cv-00331 (Eastern District of Texas);

- *AlexSam, Inc. v. Cigna Corporation et al.*, Case No. 2:20-cv-0081 (Eastern District of Texas);

- *AlexSam, Inc. v. U.S. Bank, Inc.,* Case No. 1:21-cv-00588 (Southern District of Ohio);

- *AlexSam, Inc. v. American Express Travel Related Services Company, Inc.,* Case No. 1:21-cv-08116 (Southern District of New York); and

- *AlexSam, Inc. v. HealthEquity, Inc., et al.,* Case No. 2:19-cv-00445 (District of Utah).

# TABLE OF CONTENTS

**CERTIFICATE OF INTEREST .................................................................. i**
**STATEMENT OF RELATED CASES ........................................................ ii**
**TABLE OF CONTENTS ........................................................................ iii**
**INTRODUCTION ........................................................................................ 1**
**ARGUMENT ................................................................................................ 2**

**I. ALEXSAM HAS PLAUSIBLY CLAIMED THAT "AETNA INC." HAS LIABILITY FOR PATENT INFRINGEMENT. ........ 2**
**II. ALEXSAM'S DIRECT INFRINGEMENT CLAIMS ARE PLAUSIBLE. ......................................................................... 5**

**A. AlexSam Has Alleged That Aetna's Infringing System Utilizes An Unmodified Point-of-Sale Device. ................................ 5**
**B. AlexSam Has Sufficiently Alleged Aetna's Liability For "Making" The Claimed System. ................................................... 6**

**1. AlexSam has plausibly alleged that Aetna is liable as the "final assembler" of the Accused System……………………… 6**
**2. AlexSam did not waive its claim that Aetna is liable as the "final assembler" of the Accused System……………………………...9**

**C. AlexSam Has Sufficiently Alleged Aetna's Liability For "Using" The Claimed System....12**

**III. ALEXSAM'S INDIRECT INFRINGEMENT CLAIMS ARE PLAUSIBLE....15**

**A. Identification Of "Aetna's Customers" Is Not Required....15**

**B. AlexSam Alleges That Aetna Had Presuit Knowledge And Specific Intent To Infringe....16**

**C. Aetna Is Alleged To Have Provided A Processing Hub And Multifunction Cards....19**

**D. AlexSam Has Plausibly Alleged That Aetna's Processing Hub Has No Substantial Noninfringing Use....20**

**IV. THE DISTRICT COURT INCORRECTLY DETERMINED THAT AETNA WAS SUBLICENSED UNDER THE ALEXSAM MASTERCARD PATENT LICENSE....21**

**A. Aetna's Accused Products Are Not Licensed Transactions Under The AMPL....24**

**B. AlexSam Did Not Ignore The 2007 Amendment To The AMPL, Which Is Irrelevant To Determining Whether Aetna Is Sublicensed....27**

**C. AlexSam Did Not Waive Its Mastercard Infringement Claim....28**

**CONCLUSION....29**

**CERTIFICATE OF SERVICE....1**

**CERTIFICATE OF COMPLIANCE....2**

# TABLE OF AUTHORITIES

## CASES

*ABB Turbo Systems AG v. TurboUSA, Inc.*,
774 F.3d 979 (Fed. Cir. 2014) ....................................................................6

*Acceleration Bay LLC v. 2K Sports, Inc.*,
15 F.4th 1069 (Fed. Cir. 2021) ................................................................ 11-12

*Allen v. N.Y.C. Hous. Auth.*,
No. 10 CIV 168d CM) (DF), 2012 WL 4794590 (S.D.N.Y. September 11, 2012) .......................................................................................................29

*Arista Recs., LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010) ...................................................................... 1, 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................6, 14

*Automated Merch. Sys., Inc. v. Lee*,
783 F.3d 1376 (Fed. Cir. 2015) ....................................................................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................13, 20

*Bot M8 LLC v. Sony Corp. of America*,
4 F. 4th 1342 (Fed. Cir. 2021) ...................................................... 5, 15, 16, 19

*Cemex, S.A. v. United States*,
133 F.3d 897 (Fed. Cir. 1998) ......................................................................12

*Commil USA, LLC v. Cisco Sys., Inc.*,
575 U.S. 632 (2015)........................................................................................16

*Commissioner of Int. Rev. v. Cecil B. De Mille Productions*,
90 F.2d 12 (9th Cir. 1937) ........................................................................... 2

*Conley v. Gibson*,
355 U.S. 41 (1957)...................................................................... 5-6, 9, 14

*Consolidation Coal Co. v. United States*,
351 F.3d 1374 (Fed. Cir. 2003) ....................................................................10

*Cruz v. Gomez*,
202 F.3d 593 (2d Cir. 2000) ..........................................................................6

*Darowski v. Wojewoda*,
Case No. 3:15-cv-00803 (D. Conn. Aug. 7, 2016)............................................13

*Erickson v. Pardus*,
551 U.S. 89 (2007)...............................................................................13, 20

*Gemtron Corp. v. Saint-Gobain Corp.*,
572 F.3d 1371 (Fed. Cir. 2009) ..................................................................... 2

*Harris Corp. v. Ericsson Inc.*,
417 F.3d 1241 (Fed. Cir. 2005) ....................................................................11

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*,
909 F.2d 1464 (Fed. Cir. 1990) ....................................................................17

*Icon Health and Fitness, Inc. v. Strava, Inc.*,
849 F.3d 1034 (Fed. Cir. 2017) ....................................................................11

*Industrial Bankers Securities Corporation v. Higgins*,
104 F. 2d 177 (2nd Cir. 1939) .......................................................................2

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
681 F.3d 1323 (Fed. Cir. 2012) ......................................................16, 17, 19

*Intellectual Ventures v. Motorola Mobility*,
870 F.3d 1320 (Fed. Cir. 2017) ....................................................................15

*Jordan v. Dept. of Corrections*,
Civil Action No. 3:22-cv-701 (CSH) (D. Conn. Mar. 13, 2023) .........................6

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
714 F.3d 1277 (Fed. Cir. 2013) ......................................................................5

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991) ....................................................................13

*L.E.A. Dynatech, Inc. v. Allina*,
49 F.3d 1527 (Fed. Cir. 1995) ....................................................................12

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
869 F.3d 1372 (Fed. Cir. 2017) ....................................................5, 10, 12

*Matter of Friedman*,
64 AD 2d 70 (2nd Dept. 1978)....................................................................22

*MEMC Electr. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
420 F.3d 1369 (Fed. Cir. 2005). ..................................................................18

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
\545 U.S. 913 (2005)........................................................................ 18, 20-21

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018). .........................................................5, 16, 18, 21

*Nelson v. Adams*,
529 U.S. 460 (2000)........................................................................... 10-11

*Nike Inc. v. Adidas AG*,
812 F.3d 1326 (Fed. Cir. 2016) ....................................................................10

*Ricoh Co., Ltd. v. Quanta Computer Inc.*,
550 F.3d 1325 (Fed. Cir. 2008) ..............................................................18, 20

*Singleton v. Wulff*,
428 U.S. 106 (1976)....................................................................................11

*Speaker v. U.S. D.H.S.*,
623 F.3d 1371 (11th Cir. 2010) ....................................................................13

*Tri-M Grp., LLC v. Sharp*,
638 F.3d 406 (3d Cir. 2011) ........................................................................12

*United States v. Wells*,
283 U.S. 102 (1931)........................................................................................ 2

## INTRODUCTION

Appellant AlexSam, Inc. ("AlexSam") has met its burden to provide notice of its claims against Appellee Aetna Inc. ("Aetna"). AlexSam has plausibly alleged both direct and indirect infringement by Aetna, with reference to specific facts and to facts "upon information and belief." In its Red Brief,[1] Aetna does not fully consider the allegations upon information and belief, even though such facts are proper under Second Circuit law. See *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citations omitted); Blue Br. pp. 14-15, 22-23, 38. Instead, Aetna argues facts outside AlexSam's Second Amended Complaint ("SAC") while seeking to impose a heightened pleading standard that requires dispositive evidence, not just notice of AlexSam's claims, before this case is permitted to proceed beyond the initial pleadings. This is not the law.

Additionally, Aetna's efforts to defend the District Court's determination that transactions involving Aetna's debit/medical services cards qualified as "Licensed Transactions" under AlexSam's license with Mastercard are unfounded. The District Court weighed selected facts to the exclusion of others, which is not permitted at the initial pleading stage. Also, the use of a debit/medical services card does not fall within the scope of Licensed Transactions, therefore they are not covered by the

[1] "Blue Brief" ("Blue Br.") refers to AlexSam's Opening Brief. "Red Brief" ("Red Br.") refers to Aetna's Response Brief.

AlexSam Mastercard Patent License ("AMPL").

## ARGUMENT

### I. ALEXSAM HAS PLAUSIBLY CLAIMED THAT "AETNA INC." HAS LIABILITY FOR PATENT INFRINGEMENT.

Aetna repeatedly argues that it is a "mere" holding company with no operations. See, e.g., Red Br., §III. A. This is not true. Aetna incorrectly asserts that it is a "holding company" or a "non-operating parent holding company." See Red Br. pp. 3 ("non-operating parent holding company"), 5-6 ("holding company" and "parent holding company"). Further, Aetna falsely implies that this argument is relevant to the plausibility of AlexSam's claims at this stage. As is explained below, Aetna's argument is unfounded for several reasons.

*First*, Aetna does not cite the record to support its argument; Aetna's *ipsi dixit* representations do not support dismissal. See, e.g., *Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009) (noting that "unsworn attorney argument ... is not evidence"). Importantly, the question whether Aetna is a "mere holding company" is a question of fact that is not properly decided at the pleading stage. Cf. *Industrial Bankers Securities Corporation v. Higgins*, 104 F. 2d 177, 181 (2nd Cir. 1939) (affirming judgment of auditor who concluded "whether the plaintiff is shown to be 'a mere holding or investment company'" is a question of fact). (Citing *Commissioner of Int. Rev. v. Cecil B. De Mille Productions*, 90 F. 2d 12 (9th Cir. 1937) and *United States v. Wells*, 283 US 102 (1931)). Further, whether Aetna

Inc. has subsidiaries or not is irrelevant to the issue of liability, as is explained below.

*Second*, AlexSam's factual basis for suing and maintaining its claims against Aetna Inc. was and is well-founded.[2] For example, "Aetna Inc." owns the copyright to the literature using the "Aetna" brand that it uses to sell and/or distribute the debit/medical services cards at issue (the "Aetna Cards"). See, e.g., Appx0543-0567, p. 22. "Aetna Inc." also owns the copyright to the website used to instruct its customers how to use the Aetna Cards in an infringing manner. See, e.g., Appx0543-0567, pp. 6-7, 9-10, 13-15, 17-20 (directing Aetna customers to website), 21; Appx0468-0469, ¶51 (Aetna owns, operates, advertises, and/or controls the website). Also, tellingly, when confronted with a claim of infringement related to Aetna Cards, an employee of "Aetna Inc." took responsibility for the dispute on behalf of both Aetna Inc. and its subsidiary, Payflex. Appx0468-0470, ¶¶ 50-59 (e.g., ¶58 "We are in receipt of your letters [to Aetna and Payflex] … and are currently reviewing Alexsam's allegations of possible infringement of U.S. Patent No. 6,000,608. We anticipate that it will take several weeks to complete our review and will provide you with our response as soon as it is complete.")

[2] Although AlexSam believes this "defense" is properly left to determination in the District Court on remand, AlexSam provides certain facts from the record to round out the briefing. Additional facts supporting the claim against Aetna Inc. will be produced by AlexSam and sought from Aetna during discovery if the Court permits this case to proceed.

*Third*, AlexSam has included allegations "upon information and belief" that are consistent with the foregoing undisputable facts that must be given weight. *Arista Recs., LLC*, 604 F.3d at 120 (a plaintiff may "'plead[] facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."). These facts include, for example: "Upon information and belief, Defendant employs staff (e.g., an IT department) to operate the Processing Hub in order to interface with, install, configure, manage, monitor, test, and control the debit/medical services cards and other equipment in the infringing multifunction card system." Appx0478, Appx0482, ¶¶110, 130.

In short, AlexSam has plead facts that show that Aetna Inc. was *not* a mere operating company and that it owned, managed, and controlled assets essential to the Accused System, including the website and other documentation relied upon by AlexSam in its SAC, thereby directly and indirectly infringing the Asserted Claims. That Aetna may have involved or relied upon third parties (including its subsidiaries) in its infringing activities does not absolve Aetna from liability, rather it establishes Aetna's liability. The factual record of Aetna's role in the alleged infringing conduct is thus more than sufficient for AlexSam's claims to proceed.

## II. ALEXSAM'S DIRECT INFRINGEMENT CLAIMS ARE PLAUSIBLE.

### A. AlexSam Has Alleged That Aetna's Infringing System Utilizes An Unmodified Point-of-Sale Device.

Aetna incorrectly argues, in Section B. 1. of its Red Brief, that "AlexSam does not … allege that Aetna Inc. actually uses an unmodified point-of-sale device." Red Br., pp. 29-30. There are two reasons why this argument is unavailing.

*First*, AlexSam was not required to plead infringement on an element-by-element basis. *Bot M8 LLC v. Sony Corp. of America*, 4 F. 4th 1342, 1352 (Fed. Cir. 2021) ("A plaintiff is not required to plead infringement on an element-by-element basis.) citing *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018). Instead, it is enough "that a complaint place the alleged infringer 'on notice of what activity ... is being accused of infringement.'" Ibid., citing *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013)).

*Second*, AlexSam *has* alleged that Aetna uses an unmodified point-of-sale device. Appx0541, p. 5 (alleging upon information and belief "Aetna provides and/or uses a transaction processor for receiving card data from an unmodified existing standard point-of-sale device…"). The specific evidence of Aetna's use of such devices will be adduced during discovery after claim construction, but the absence of such specific evidence at this point is not a basis to dismiss AlexSam's claims. *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957) ("[S]implified 'notice pleading'

is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues.")[3]

Aetna's argument thus does not support dismissal of AlexSam's SAC.

### B. AlexSam Has Sufficiently Alleged Aetna's Liability For "Making" The Claimed System.

#### 1. AlexSam has plausibly alleged that Aetna is liable as the "final assembler" of the Accused System.

Aetna simultaneously argues that (i) AlexSam offers *no specific facts*, and (ii) AlexSam offers *detailed facts*. Red Br., pp. 20 ("detailed facts"), 21 (no "specific facts"). Aetna attempts to reconcile this contradiction by arguing that the "detailed facts" presented by AlexSam relate to parties *other than* Aetna (e.g., third party partners and subsidiaries). Red Br., p. 21. However, this argument ignores three important points.

---

[3] Aetna criticizes AlexSam for citing to *Conley* in its Blue Brief. See Red Br. p. 18. AlexSam acknowledges and has applied the holdings of *Iqbal* and *Twombly* in its Blue Brief. However, AlexSam does not agree that *Conley* can or should be forgotten. AlexSam's view is shared by numerous Courts who regularly cite *Conley* for the propositions advanced by AlexSam. See, e.g., *Ashcroft v. Iqbal*, 556 U.S. 662, 698-699 (2009) (J. Souter, dissenting opinion). "Tak[en] … as a whole, it gives … 'fair notice of what the... claim is and the grounds upon which it rests.'" (citing *Conley*); *ABB Turbo Systems AG v. TurboUSA, Inc.*, 774 F. 3d 979, 984 (Fed. Cir. 2014); *Jordan v. Dept. of Corrections*, Civil Action No. 3:22-cv-701 (CSH) (D. Conn. Mar. 13, 2023) ("Dismissal of the complaint is only appropriate if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'") citing *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (quoting *Conley*, 355 U.S. at 45-46).

*First*, the Asserted Claims are system claims that include (but are not limited to) existing components that may be owned or operated by different parties. See, e.g., Appx0496, col. 4, lines 25-29 ("In order to achieve the desired functionality, the system 108 ***uses existing banking networks in a unique and novel way*** to gain access to virtually all existing retail point-of-sale (POS) devices 105.") (***Emphasis*** added.) That third parties are identified by the factual evidence incorporated into the SAC – whether unrelated third parties or subsidiaries – does not "plead AlexSam out of Court;" such evidence is offered to support AlexSam's claim that Aetna is responsible for the infringement of such components as the "final assembler." That other entities are involved with system components does not undermine AlexSam's claim that Aetna "makes" the system as the final assembler of the various components – *it establishes it*. See, e.g., Appx0465-0466, ¶36 ("A banking network is … a critical aspect of Mr. Dorf's system because … other banks and financial institutions ***must participate*** in these transactions, including the merchant bank, the issuing bank, and 3rd party transaction agents such as merchant acquirers, and card processors acting on behalf of the banks.") (***Emphasis*** added.) The evidence of third-party involvement is directly relevant to AlexSam's notice of the nature of the claim against Aetna.

*Second*, AlexSam has properly asserted facts that support its claims in the SAC "upon information and belief." See Blue Br. pp. 14-15, 22-23, 38 (citing *Arista*,

604 F.3d at 120 (citations omitted). Most of these allegations of fact are not denied or challenged by Aetna. In fact, the phrase "information and belief" only appears two times in Aetna's Red Brief, both times quoting from the Second Amended Complaint. Notably, Aetna does not mention *Arista*, the case AlexSam cites in support of its "information and belief" allegations, in its Red Brief.

AlexSam's allegations include that "Upon information and belief, ***Defendant employs staff (e.g., an IT department) to operate the Processing Hub in order to interface with, install, configure, manage, monitor, test, and control the debit/medical services cards and other equipment in the infringing multifunction card system***." Appx0478 (SAC), ¶110 (***emphasis*** added). The Processing Hub is "necessary for [the claimed] system to work." Appx0461, ¶20. This allegation thus has particular relevance. It is the addition of this special-purpose computer, with the use of a bank identification number, that transforms the generic banking network into the claimed system. Appx0461, Appx0463, ¶¶21, 27-30. And it is Aetna's "installation" of this component and the subsequent "configur[ation], manage[ment], monitoring, test[ing], and control" by Aetna that "assembles" the components into the infringing system. Aetna is, thus, liable as the "final assembler."

*Third*, AlexSam is not required to *prove* its claim against Aetna at the initial pleading stage; AlexSam is only required to *provide notice* of the claim, which it has done. Blue Br. pp. 37-39. Discovery will allow the parties to flesh out these claims

as the case proceed. *Conley*, 355 U.S. at 47-48, *supra*.

### 3. AlexSam did not waive its claim that Aetna is liable as the "final assembler" of the Accused System.

In a bare, two-sentence argument, Aetna asserts that AlexSam waived its "final assembler" argument because it was not specifically raised in the District Court. Red Br. pp. 34-35. This argument fails for several reasons.

*First*, the issues and facts underlying the "final assembler" argument *were* presented in the District Court. There can be no dispute that AlexSam accused Aetna of infringing the Asserted Claims by "making" the claimed system, thus *that* issue was properly raised below. See, e.g., Appx0477 (SAC), ¶107.

*Second*, Aetna cannot reasonably dispute that AlexSam's allegations of infringement include that Aetna assembled and provided the system to its customers. For example, AlexSam alleged that Aetna has infringed the Asserted Claims by "***providing*** a multifunction card system, containing at least one debit/medical services card." Id., ¶108 (***emphasis*** added). AlexSam also alleged that Aetna "…owns, operates, or leases all equipment in the infringing system, or alternatively ***exercises direction and control over the operation of all equipment in the infringing system*** in order to provide the benefit of debit/medical services cards to its customers." Id., ¶109 (***emphasis*** added). Alexsam further alleged that Aetna "employs staff (e.g., an IT department) to operate the Processing Hub in order to ***interface with, install, configure, manage, monitor, test, and control the***

***debit/medical services cards and other equipment in the infringing multifunction card system***." Appx0478, ¶110 (***emphasis*** added).

*Third*, AlexSam also opposed Aetna's Motion to Dismiss by arguing that Aetna directs and controls its customers' use of the infringing system and the activities of the various financial institutions involved with transactions over the infringing system. Appx1053-1054, pp. 28-29.

*Fourth*, the District Court noted the relevance of *Lifetime Indus. Inc. v. Trim-Lock Inc.*, 869 F.3d 1372 (Fed. Cir. 2017) to the "'make,' prong of Section 271(a) …" in its Order on Aetna's Motion to Dismiss. Appx0027, fn. 9. Thus, although the District Court did not apply the "final assembler" law, it was aware of it when it ruled on Aetna's motion to dismiss. Therefore, the District Court was presented with the facts and the law on the issue. In short, the only term that was not used below was "final assembler."

It is true that, as a general proposition, a federal appellate court does not consider issues not raised before the lower tribunal. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). However, the exact phrasing of the argument need not have been used below "so long as it can be said that the tribunal was 'fairly put on notice as to the substance of the issue.'" *Nike Inc. v. Adidas AG*, 812 F.3d 1326, 1342 (Fed. Cir. 2016) (citing *Consolidation Coal Co. v. United States*, 351 F.3d 1374, 1378 (Fed. Cir. 2003) (quoting *Nelson v. Adams*, 529 U.S. 460, 469 (2000) ("But [issue

preservation] does not demand the incantation of particular words; rather, it requires that the lower court be fairly put on notice as to the substance of the issue.”)).

But even if an issue was *not* presented below, there is no absolute bar to considering and deciding the issue on appeal; forfeiture is a matter of discretion. *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1251 (Fed. Cir. 2005) (“An appellate court retains case-by-case discretion over whether to apply waiver.”). In *Icon Health and Fitness, Inc. v. Strava, Inc.*, the Federal Circuit set forth some relevant considerations to guide the exercise of such discretion. 849 F.3d 1034, 1040 (Fed. Cir. 2017) (citing *Automated Merch. Sys., Inc. v. Lee*, 783 F.3d 1376, 1379 (Fed. Cir. 2015)). These considerations include (i) whether the issue “involves a pure question of law and refusal to consider it would result in a miscarriage of justice,” and (ii) whether “the issue presents significant questions of general impact.” Id.

In this case, the issue presented by AlexSam’s “final assembler” claim is a pure question of law, and AlexSam contends that it would be a miscarriage of justice if the plausibility of AlexSam’s claims were not examined by this Court. Moreover, the law regarding “final assembler” liability is not yet well developed, and the issue presents a significant question that will impact the patent law community, generally. In fact, counsel for AlexSam could locate only one other case that used the phrase “final assembler.” See *Acceleration Bay LLC v. 2K Sports, Inc.*, 15 F.4th 1069 (Fed.

Cir. 2021).[4]

Finally, that no additional factfinding is required to address the sufficiency of AlexSam's SAC weighs heavily against a finding of waiver. See, e.g., *Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 418 (3d Cir. 2011) ("[W]e have been reluctant to apply the waiver doctrine when only an issue of law is raised and no additional fact-finding is necessary.") (internal quotation marks omitted)); *L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527, 1531 (Fed. Cir. 1995) (noting that a forfeited argument is more readily addressed if it presents "a pure question of law"); *Cemex, S.A. v. United States*, 133 F.3d 897, 902 (Fed. Cir. 1998).

**2. AlexSam Has Sufficiently Alleged Aetna's Liability For "Using" The Claimed System.**

Aetna argues that because *other* entities use the system, AlexSam cannot plausibly allege that *Aetna* "uses" the system by controlling it and obtaining benefit from each element of the claimed system. Red Br., pp. 33-34. Aetna's argument is unfounded.

Aetna seeks to prop up its argument by introducing allegations of fact that are not discernible from the face of the SAC – for example, that Aetna is a "non-

[4] Although the phrase "final assembler" is not used, *Lifetime Industries*, 869 F.3d 1372, provides an analytical framework for the claim. Id. At 1378-79 (reversing dismissal of direct infringement count on the basis defendant made only one of the two components comprising the invention).

operating corporate parent." Red Br., p. 33. Aetna then alleges that it is "implausible that Aetna Inc. itself would be testing, installing, or configuring a system, or a component thereof, that is 'administered' or 'issued' by a third party as the exhibits to the SAC set forth." Id. However, as is noted in Part II, above, Aetna's operational role is a contested issue of fact. Moreover, bare factual allegations outside the SAC should not be considered on a motion to dismiss. See, e.g., *Darowski v. Wojewoda*, Case No. 3:15-cv-00803 (D. Conn. Aug. 7, 2016) ("In assessing a motion to dismiss for failure to state a claim, courts are limited to the complaint, documents attached to or incorporated in the complaint, and matters of which judicial notice may be taken.") (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)).

Aetna also ignores the proper pleading standard, which is to "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (quoting *Conley*, 355 U.S. at 47). Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); see also *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) ("Specific facts are not necessary...."); *Speaker*, 623 F.3d at 1380 (quoting *Iqbal*). Rule 8 "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the alleged violation. *Twombly*, 550 U.S. at 556. That is all that is required, and AlexSam has exceeded that requirement.

As noted in its Blue Brief, AlexSam has alleged sufficient facts to proceed on its claim of direct infringement by Aetna's use of the Accused System. Specifically, AlexSam has alleged that Aetna controlled the infringing system through the Processing Hub. Blue Br., pp. 32-34. The Processing Hub is the "nerve center" of the system (id., p. 33), and is "necessary for [the] system to work." Appx0461, ¶20. The Processing Hub effectively controls the system. See, e.g., Appx0463, Appx0465, ¶¶27-28, 34 Blue Br., pp. 32-34. Moreover, AlexSam has alleged that Aetna derives a direct benefit from its use of all elements of the Asserted Claim including revenue, sales of revenue generating products, and sales of health plans. See, e.g., Appx0463, Appx0465 (SAC), ¶¶27-28, 34; Blue Br., pp. 32-34.

Aetna's argument that AlexSam "fail[ed] to provide notice of any specific activity of Aetna Inc. that would control and derive a benefit from each element of the claimed system" thus fails. Also, Aetna's argument that AlexSam is required to separately identify Aetna's benefit from the use of each element, separate from the Accused System (Red. Br., p. 34 ("Nor do any of the allegations specify how Aetna Inc. would itself benefit from its "use" of each and every limitation of Claims 32 and 33, including, for example, an unmodified POS device.")), is wrong; that is not required at this stage. *Bot M8*, 4 F. 4th at 1352 ("A plaintiff is not required to plead

infringement on an element-by-element basis.)[5]

AlexSam has therefore pleaded a plausible claim of direct infringement by Aetna for its *use* of the Accused System.

## III. ALEXSAM'S INDIRECT INFRINGEMENT CLAIMS ARE PLAUSIBLE.

Although Aetna's Red Brief confusingly conflates contributory and induced infringement, the elements of these two forms of indirect infringement differ in material ways. As is explained in its Blue Brief, AlexSam has followed established authority and properly pleaded both types of indirect infringement. And, as is explained below, none of Aetna's scattershot arguments is sufficient to support dismissal of the SAC.

### A. Identification Of "Aetna's Customers" Is Not Required.

Aetna argues that the SAC has "no factual allegation supporting the assumption that Aetna Inc. has customers." Red Br., p. 36. Aetna then mistakenly equates "customers" with cardholders. Id., p. 37.

*First*, "customers" is not a positively claimed element of the Asserted Claims. Logically, failure to address an unclaimed element is irrelevant to the plausibility of

---

[5] Such a showing is not supported by the citation provided by Aetna. Aetna cites "*Intellectual Ventures [v. Motorola Mobility]*, 870 F.3d [1320] at 1331 (patentee 'has never identified any benefit flowing to [the manufacturer] above and beyond that which would flow to its customers due to the manufacturer's testing.')" as support for its claim that AlexSam had not identified a benefit from Aetna's use of the claimed POS device. This language does not support such a requirement.

AlexSam's claims.

*Second*, even if "customers" were a claimed element, AlexSam is not obliged at this stage to address its claims on an element-by-element basis. *Bot M8*, 4 F. 4th at 1352 ("A plaintiff is not required to plead infringement on an element-by-element basis.) citing *Nalco*, 883 F.3d at 1350.

*Third*, there is sufficient evidence in the SAC that Aetna has customers that use the Accused System via Aetna-issued debit/medical services cards. See, e.g., Appx0543-0567 (references to "Aetna members;" direction to HSA users re debit/medical services cards). See *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012) ("To state a claim for indirect infringement ... a plaintiff need not identify a specific direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists.")

In sum, Aetna's argument is not a basis for dismissal of AlexSam's indirect infringement claims.

**B. AlexSam Alleges That Aetna Had Presuit Knowledge And Specific Intent To Infringe.**

It is true that presuit knowledge of the patent and of infringement are required for both contributory and induced infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) ("[l]ike induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement."). However, specific intent to infringe is required only for induced

infringement. See, e.g., *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990) (unlike induced infringement, contributory infringement requires "only proof of a defendant's knowledge, not intent, that his activity cause[s] infringement.") Aetna combined these arguments, but they are separate and distinct.

In its Red Brief, Aetna argues, in essence, that (i) AlexSam provided notice of alleged infringement regarding one brand of Accused Cards (Visa), but not another brand (MasterCard) that was otherwise identical; (ii) AlexSam did not identify the Asserted Claims in the notice;[6] and (iii) AlexSam did not "identify any act of Aetna Inc. that induced or contributed to another's infringement." Red Br., p. 38. The first two showing are not required, and Aetna does not cite any case law to support its argument.

With respect to the third point, Aetna also argues that "there are no factual allegations of specific encouragement or instruction to use the claimed 'transaction processor,' a 'first database,' or 'an unmodified existing point of sale device.'" Red Br., pp. 38-39. But these arguments fail. Such granular allegations are not required to put Aetna on notice of the nature of the claims against it. Moreover, the Accused System is automated, and by instructing Aetna customers to use the system to perform transactions, Aetna necessarily encouraged them to use the operative

[6] The *only* claims related to debit/medical services cards are the two Asserted Claims.

components of the system, including the claimed "transaction processor," the "first database," and the "unmodified existing point of sale device" that initiates the transactions.

Moreover, as AlexSam noted in its Blue Brief (at page 18), circumstantial evidence may suffice to prove specific intent. *MEMC Electr. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005). In short, AlexSam alleged that Aetna: (1) had actual knowledge of the '608 Patent and of "AlexSam's allegations of possible infringement;" and (2) nonetheless induced infringement "by providing the hardware and/or software necessary for its customers to make or use the infringing multifunction card system." (Appx0468-0470, Appx047 at ¶¶50-59, 115). Such allegations are sufficient at the pleading stage. See, e.g., *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1343 (Fed. Cir. 2008), citing and quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005) (providing instruction on how to engage in infringing use "show[s] an affirmative intent that the product be used to infringe.") The foregoing cases were cited by AlexSam in its Blue Brief, but Aetna did not address them. Also, AlexSam identified the facts supporting these claims, but Aetna did not address them. Blue Br., pp. 18-23 (identifying instructional brochures, Aetna's role in designing, supporting, and promoting infringing use of the Accused System). AlexSam's allegations are sufficient. *Nalco Co.*, 883 F.3d at 1355.

### C. Aetna Is Alleged To Have Provided A Processing Hub And Multifunction Cards.

The general rule is that a patent plaintiff need not prove its case at the pleading stage. *Bot M8*, 4 F. 4th at 1352 ("Once more, we explain that patentees need not prove their case at the pleading stage.") (citing *In re Bill of Lading*, 681 F.3d at 1339) (internal citations omitted). Moreover, a patent plaintiff need not plead on an element-by-element basis. Id. ("A plaintiff is not required to plead infringement on an element-by-element basis.) citing *Nalco*, 883 F.3d at 1350.

Nevertheless, Aetna contends that, although AlexSam has alleged that Aetna provides the Processing Hub of the Accused System, the SAC provides no "factual enhancement" in support of this allegation. Red Br., p. 39. This too is not true.

AlexSam has put Aetna on notice of its contention that Aetna provides the Processing Hub for the Accused System. See, e.g., Appx0463, ¶¶27-28 (functionality of Processing Hub; management of "the different functions of each account"); Appx0477-0478, ¶¶109-110 (Aetna uses its Processing Hub to "manage … and control [its] debit/medical services cards and other equipment in the infringing multifunction card system"); Appx0479, ¶118 (Aetna's Processing Hub "is capable of authorizing, approving, and declining payments at healthcare providers and pharmacies for eligible services, goods, and prescriptions."); see also Appx0536-0542, p. 3 (screenshot from www.aetna.com (copyright owner identified as "Aetna Inc." (hereafter, the "Aetna Inc. Website")); and Appx0543-0567, p. 4

(directing Aetna customers how to use the Accused System), p. 6 (directing Aetna customer to the Aetna Inc. Website to process medical claims), p. 10 (directing Aetna customer to the Aetna Inc. Website to obtain medical ID cards). In fact, Attachment 1 to Exhibit C of the SAC identifies "Aetna Inc." as the copyright owner for the critical document. Id., p. 22.

AlexSam has provided an enhanced factual basis for its allegation that Aetna is responsible for providing, *inter alia*, the Processing Hub of the Accused System. This is true even though such specific facts are not necessary. See, e.g., *Erickson*, 551 U.S. at 93 (2007) (per curiam) ("***Specific facts are not necessary***; the statement need only 'give the defendant ***fair notice of what the ... claim is and the grounds upon which it rests***.'") (quoting *Twombly*, 550 U.S. at 555 (***emphasis*** added) (citation omitted) (internal quotation marks omitted)).

### D. AlexSam Has Plausibly Alleged That Aetna's Processing Hub Has No Substantial Noninfringing Use.

AlexSam has plausibly alleged that the Processing Hub of the Accused System has no substantial noninfringing use *because it is a special purpose computer that was designed to act as the "nerve center" of the system*. Blue Br. pp. 26-27; Appx0522, ¶51. Its sole purpose is to create the claimed system. See *Ricoh Co., Ltd.*, 550 F. 3d at 1337; *Metro-Goldwyn-Mayer Studios Inc.*, 545 US at 932-33 ("In sum, where an article is 'good for nothing else' but infringement, there is no legitimate public interest in its unlicensed availability, and there is no injustice in presuming or

imputing an intent to infringe.") (internal citation omitted).

To the extent Aetna disputes AlexSam's allegations, this presents a factual dispute that should not be resolved at the initial pleading stage. See, e.g., *Nalco Co.*, 883 F. 3d at 1357 ("Nalco also alleges that the Chem-Mod Solution Mixture has no substantial noninfringing uses. We must presume these allegations are true at the pleading stage. To the extent Defendants dispute these allegations, this is a factual inquiry not suitable for resolution on a motion to dismiss.").

## IV. THE DISTRICT COURT INCORRECTLY DETERMINED THAT AETNA WAS SUBLICENSED UNDER THE ALEXSAM MASTERCARD PATENT LICENSE.

For the District Court to reach a finding that certain of Aetna's accused products are licensed under the AlexSam Mastercard Patent License (AMPL), the District Court had to resolve factual disputes and legal issues in favor of Aetna. The District Court erred in doing so.

*First*, the District Court determined that transactions involving the PayFlex Mastercard were "Licensed Transactions" under the AMPL. Appx0020. The Court's reason for this conclusion was that "it is not possible for a MasterCard product to infringe Claim 33 outside of the protection of the AMPL." Appx0018. This finding is wrong. To properly determine whether the Aetna accused products are covered under the AMPL, the District Court needed to apply New York law, which prohibits contract interpretation that may render provisions superfluous. See Appx0668;

*Matter of Friedman*, 64 AD 2d 70, 81 (2nd Dept. 1978). The District Court did not apply the appropriate law when dismissing the SAC. See Appx0001-0083.

*Second*, the District Court improperly looked to the *IDT* case, which involved different accused products and different asserted claims, to conclude that Aetna was sublicensed. In doing so, the District Court ignored the fundamental differences between the accused products in the cases (medical cards (Aetna) v. phone cards (IDT)) and how these differences – namely, that one is activated at the POS terminal (phone card) and the other is not (medical card) - result in one entity being sublicensed (IDT) and the other not (Aetna) per the terms of the AMPL. The District Court concluded, without any basis, that "although the case in *IDT Corp.* involved activation transactions, those transactions are similar to these Claims [32 and 33]." Appx0019-0020 (*comparing* Claims 32 and 33 *with* Claims 57 and 58 of the '608 Patent).

*Third*, the District Court ignored Mastercard's letter from 2007 stating that medical cards – such as the Aetna accused products in this case – are not covered by the AMPL. AlexSam asked the District Court to take judicial notice of Mastercard's letter (Appx1859-1868), but it declined to do so. See Appx0050.

*Fourth*, Aetna contends that AlexSam waived its infringement allegations against the PayFlex Mastercard because they were not included in the proposed

Third Amended Complaint (TAC).[7] This is not true. AlexSam did not waive its argument; it had no choice but to adhere to the District Court's ruling that Aetna was a sublicensee until this appeal could be brought. For that reason, AlexSam was prohibited from bringing an infringement claim against Aetna for its PayFlex Mastercard.

*Fifth*, the District Court ignored that the AMPL is the subject of the Mastercard Appeal (Case No. 22-2046, pending before this Court), and that whether the district court in that case conducted contract interpretation in accordance with applicable Second Circuit law is at issue in that appeal. Critically, the issue surrounding the termination of the AMPL is front and center because the District Court never made any determination on Mastercard's allegation that the AMPL terminated early – before the patents expired. Even if Aetna is deemed to be sublicensed, which AlexSam contends it is not, any sublicense would have been extinguished with the termination of the AMPL. In short, if the AMPL terminated early, as Mastercard alleged, then Aetna could not be sublicensed for the entire damages period. This issue was not addressed by the District Court in dismissing AlexSam's complaint.

The District Court's finding that Aetna was sublicensed under the AMPL was

---

[7] The TAC was never filed as a pleading below; per the District Court's instructions, it was only an exhibit for the court's consideration.

incorrect, and the District Court's Order dismissing the case is due to be reversed and the case remanded for a full and proper consideration of all relevant facts pursuant to applicable law.

### A. Aetna's Accused Products Are Not Licensed Transactions Under The AMPL.

Aetna incorrectly states that: "either a system involving the PayFlex Mastercard practices Claim 33 and is therefore licensed under the AMPL, or it does not practice Claim 33 and thus does not infringe." Red Br. at 44. This conclusion is simply wrong, and it is also what led the District Court to incorrectly find that the PayFlex Mastercard is licensed under the AMPL. A review of the Asserted Claims compared to what constitutes a "Licensed Transaction" under the AMPL makes it clear that a claim of license cannot be equated with a claim of infringement. (*Compare* Appx0010 (Section 1.3) *with* Appx0502 (Claims 32 and 33)).

A "Licensed Transaction" under the AMPL requires additional limitations that the Asserted Claims do not. Therefore, the PayFlex Mastercard can infringe the Asserted Claims and ***not*** be licensed under the AMPL. For example, in the AMPL, a "Licensed Transaction" requires the "***process of activating or adding value…associated with a transaction that utilizes Mastercard's network or brands…wherein data is transmitted between POI Device and MasterCard's financial network ….***" When completing a transaction using the PayFlex MasterCard at a POI Device (a defined term in the AMPL, which is broader than the

Asserted Claims), the account is not activated at the POI Device, and no value is added during this transaction. Medical cards, such as the PayFlex Mastercard, are loaded on a periodic basis (i.e., annually) with funds allocated by an employee through their employer, not during a transaction at a POI Device.[8]

Furthermore, neither the District Court nor Aetna has ever explained how Aetna's Accused Products fall within the "Licensed Transaction" definition of the AMPL. That is because there is no plausible explanation. Medical cards, such as the PayFlex Mastercard, are neither activated nor is value added during a transaction at a POI Device using the Mastercard network. Instead, medical cards are "loaded" with value on a periodic basis (i.e., annually) based on allocations made by an employee through its employer, for example. Section 1.3 of the AMPL explains that the "entire value chain," which could include Aetna, only extends a license to "other parties [that] participate in a Licensed Transaction." Red Br. at 45.

In its Red Brief, Aetna relies on *AlexSam, Inc. v. IDT Corp.*, as support for its argument that it is licensed under the AMPL because Aetna is a sublicensee as a part of the "entire value chain." See Red Br. at 47. However, Aetna failed to apply the

---

[8] Aetna claims that AlexSam accuses it of being "responsible for activation transactions over the MasterCard network." Red Br. at 46 (citing Appx0485, ¶141). This cited paragraph was included in the SAC by mistake, which can be confirmed from the face of the Asserted Claims in this case that do not include "activation and loyalty point crediting processes." Id.

"Licensed Transaction" definition in its entirety, which is required for a party to be included in the entire value chain. Said another way, there is no express or implied license under the AMPL ***unless*** the transaction is a Licensed Transaction:

> Such Licensed Transaction includes the entire value chain and all parts of the transaction….To the extent that these other parties participate in a Licensed Transaction, they will also be licensed under this Agreement, ***but only to the extent of such parties' participation in a Licensed Transaction***.

Red Br. at 45 (citing Appx0657) (***emphasis*** added).

The finding in *IDT* supports AlexSam's position that the PayFlex Mastercard product is not covered by the AMPL. There is an important difference between the non-medical cards accused in the *IDT* case and the PayFlex Mastercard medical cards accused in this case. IDT argued that:

> it is undisputed that IDT card transactions using the SafeNet system are activated (or value is added to such products) using a POI Device and MasterCard's financial network.

Appx1436. Importantly, the IDT accused products do, indeed, operate differently than Aetna's accused products, which are not activated using a POI Device and MasterCard's network nor is value added in this way. Therefore, Aetna's reliance on the *IDT* case is misplaced.

### B. AlexSam Did Not Ignore The 2007 Amendment To The AMPL, Which Is Irrelevant To Determining Whether Aetna Is Sublicensed.

Contrary to Aetna's claim in its Red Brief, AlexSam did not ignore the two amendments to the AMPL. See Red Br. at 48. Instead, AlexSam disagrees with Aetna's claim that the 2007 Amendment alters the "Licensed Transaction" definition such that Aetna would then become sublicensed under the AMPL. As reproduced below, in pertinent part, the 2007 Amendment added language to include a "process of exchanging of information related to an information card":

> The definition of Licensed Transaction in Section 1.3 of the License Agreement is hereby ***amended to further encompass each process of exchanging information related to an information card between POI Device and MasterCard's financial network*** provided that such process is covered by one of the Licensed Patents.

Appx0673-0675 (***emphasis*** added). This amendment to the AMPL does not have any relevance here. None of Aetna's accused products is an "information card." Therefore, the addition of another card type – an "information card" – to the original "Licensed Transaction" definition has no bearing on the analysis here. The Aetna accused products, including the PayFlex Mastercard, are medical cards, such as a HSA (Health Savings Account) or a FSA (Flexible Spending Account) card. HSA and FSA cards are ***not*** information cards; they are payment cards.

In a July 2, 2007 letter from Mastercard's counsel to AlexSam's counsel (hereinafter, the "July 2007 Letter"), which AlexSam submitted to the District Court

in a Request for Judicial Notice In Support of [AlexSam's] Motion for Reconsideration (Dkt. No. 108; Appx1864-1868), Mastercard clearly explains why HSA/FSA cards are not "information cards" and thus not "Licensed Transactions". AlexSam and Mastercard – the only parties to the AMPL – agree on this point. Specifically, Mastercard states in the July 2007 Letter that "these [HSA/FSA] cards neither activate nor add value to an account at the POS and they are not a 'medical information card' passing medical information through the MasterCard network." Appx1867. Mastercard further explains that "[t]hese HSA/FSA cards are simply prepaid cards used to purchase goods or services that qualify as qualified healthcare expenses under IRS rules." Id. Mastercard further describes its position as follows:

> As such, these [HSA/FSA] cards are simply used to make ordinary purchase transactions for specific goods or services. The only difference between HSA/FSA card transactions and other typical card transactions is the manner of payment. Instead of a cardholder sending payment to the card issuer for purchases, purchases are funded automatically through an HSA or FSA account. Regardless, no medical information is received or forwarded by MasterCard.

Appx1867. For the foregoing reasons, Aetna's accused products are not Licensed Transactions under the AMPL, including the 2007 Amendment, and Aetna is not a sublicensee of the AMPL.

### C. AlexSam Did Not Waive Its Mastercard Infringement Claim.

AlexSam sought leave to file an amended complaint (proposed third

amended) that did not include the PayFlex Mastercard product because the District Court had already determined that Aetna was sublicensed under the AMPL, and AlexSam was not permitted to file an amended complaint after the SAC. Therefore, the operative complaint at the time of dismissal (SAC) included a declaratory judgment claim asking the district court to find that Aetna was not licensed, among other things, related to the AMPL. The District Court dismissed AlexSam's SAC; therefore, AlexSam could not re-allege its claim against the PayFlex Mastercard given the finding that Aetna was sublicensed. The removal of this claim was therefore not voluntary. See Red Br. at 52 (citing *Allen v. N.Y.C. Hous. Auth.*, No. 10 CIV 168d CM) (DF), 2012 WL 4794590 (S.D.N.Y. September 11, 2012).

## CONCLUSION

For the reasons set forth in both AlexSam's Blue Brief and this Reply, the District Court's granting of Aetna's motion to dismiss should be reversed and the case remanded so that AlexSam's patent infringement claims can proceed.

Dated: March 31, 2023 Respectfully submitted,

*/s/ Jacqueline K. Burt*

Jacqueline K. Burt
HENINGER GARRISON DAVIS, LLC
3621 Vinings Slope, Ste. 4320
Atlanta, Georgia 30339
Email: jburt@hgdlawfirm.com
Telephone: (404) 996-0861
*Attorney for Plaintiff-Appellant, AlexSam, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, on behalf of Plaintiff-Appellant ALEXSAM, INC., I caused to be filed with the Clerk of the United States Court of Appeals for the Federal Circuit *via* the Court's CM/ECF system, which caused it to be served on all counsel of record, a copy of the ALEXSAM, INC.'S REPLY BRIEF.

Dated: March 31, 2023

Respectfully submitted,

*/s/ Jacqueline K. Burt*

Jacqueline K. Burt
HENINGER GARRISON DAVIS, LLC
3621 Vinings Slope, Ste. 4320
Atlanta, Georgia 30339
Email: jburt@hgdlawfirm.com
Telephone: (404) 996-0861
*Attorney for Plaintiff-Appellant, AlexSam, Inc.*

# CERTIFICATE OF COMPLIANCE

Pursuant to Rules 32(g) and 28.1(e)(3) of the Federal Rules of Appellate Procedure ("Fed. R. App. P.") and Rules 32(b)(3) and 28.1(c) of the Federal Circuit Rules ("Fed. Cir. R."), AlexSam certifies:

1. This document complies with the type-volume limitation because it contains 6,934 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).
2. This document complies with the typeface requirements of because it has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO in Times New Roman 14-point font.
3. This document complies with the limitations set forth in Fed. Cir. R. 28(d) because it contains no words (including numbers) marked as confidential.

Dated: March 31, 2023

Respectfully submitted,

*/s/ Jacqueline K. Burt*
Jacqueline K. Burt
*Attorney for Plaintiff-Appellant, AlexSam, Inc.*