# United States Court of Appeals for the Federal Circuit

---

**ALEXSAM, INC.,**
*Plaintiff-Appellant*

**v.**

**AETNA, INC.,**
*Defendant-Appellee*

---

2022-2036

---

Appeal from the United States District Court for the District of Connecticut in No. 3:19-cv-01025-VAB, Judge Victor A. Bolden.

---

Decided: October 8, 2024

---

STEVEN RITCHESON, Insight, PLC, Marina del Rey, CA, argued for plaintiff-appellant. Also represented by JACQUELINE KNAPP BURT, Heninger Garrison Davis, LLC, Atlanta, GA; TIMOTHY C. DAVIS, W. LEE GRESHAM, III, Birmingham, AL.

THOMAS ROHBACK, Axinn, Veltrop & Harkrider LLP, Hartford, CT, argued for defendant-appellee. Also represented by MATTHEW S. MURPHY.

---

Before LOURIE, BRYSON, and STARK, *Circuit Judges*.

STARK, *Circuit Judge*

AlexSam, Inc. ("AlexSam") appeals the dismissal of its complaint by the U.S. District Court for the District of Connecticut based on what the court found to be its failure to state plausible claims of patent infringement. AlexSam's complaint alleged that Aetna Inc. ("Aetna") marketed Mastercard-branded products ("Mastercard Products") as well as VISA-branded products ("VISA Products") that directly and indirectly infringe two claims of AlexSam's U.S. Patent No. 6,000,608 ("'608 patent"). Because the district court erred in its review of a license agreement and failed to take all of the complaint's well-pled factual allegations as true, we vacate and remand portions of the district court's dismissal.

# I

## A

The '608 patent is entitled "Multifunction Card System." It issued on December 14, 1999 and expired in 2017, before this suit was filed.

The '608 patent is directed to "a debit/credit card capable of performing a plurality of functions" and a "processing center which can manage such a multifunction card system." '608 patent 1:26-35. Unlike past card systems, the multifunction card system of the '608 patent uses a central "processing hub" to conduct specialized card functions through an existing banking network. One embodiment of the multifunction card allows a cardholder "to keep track of medical savings accounts or various other means for paying for medical services" by accessing a "database which maintains the medical funds for the cardholder." '608 patent 10:40-44. This information is stored in a remote database that is maintained by a "processing hub," which is described as "the nerve center" of the multifunction card system. '608 patent 4:22-23. The multifunction card

system accesses the processing hub through standard point of sale ("POS") devices interfacing with an existing bank network. When a card is swiped at a POS device, the POS device recognizes the card's unique banking identification number ("BIN"); then a local transaction processor connects to the processing hub through the existing banking network. The processing hub then performs the desired functionality, such as providing database access or remotely authorizing, rejecting, or transferring money from the cardholder's medical funds.

At issue in this litigation are claims 32 and 33. Claim 32 recites:

A multifunction card system comprising:

a. at least one debit/medical services card having a unique identification number encoded on it comprising a bank identification number approved by the American Banking Association for use in a banking network;

b. a transaction processor receiving card data from an unmodified existing standard point-of-sale device, said card data including a unique identification number;

c. a processing hub receiving directly or indirectly said card data from said transaction processor; and

d. said processing hub accessing a first database when the card functions as a debit card and

> said processing hub accessing a second database when the card functions as a medical card.

’608 patent 15:65-16:11. Claim 33 depends from claim 32 and requires that “the unique identification number further comprises a medical identification number.” *Id.* at 16:12-14.

B

Also pertinent to this appeal is a May 2005 license agreement (“License Agreement” or “Agreement”) between AlexSam and Mastercard International Inc. (“Mastercard”). The License Agreement grants Mastercard a “license under the Licensed Patents,” including the ’608 patent, “to process and enable others to process Licensed Transactions.” J.A. 655-56 ¶¶ 1.1, 2.1. A “Licensed Transaction” is defined in the Agreement as “each process of *activating or adding value* to an account or subaccount which is associated with a transaction that utilizes MasterCard’s network or brands wherein data is transmitted between a POI Device [i.e., “Point-Of-Interaction Device,” which includes a POS terminal] and MasterCard’s financial network or reversing such process, provided that such process is covered by one of the Licensed Patents.” J.A. 656 ¶ 1.3 (emphasis added).[1] The Agreement additionally provided that “[s]uch Licensed Transaction includes the entire value chain and all parts of the transaction and may involve other parties including but not limited to: issuing banks,

---

[1] There is no dispute that “activating” in this context means turning on a card or making it functional, while “adding value” means associating an increased amount of funds with the card.

acquiring banks, processors, merchants, card vendors and third party marketing firms." *Id.*

The License Agreement contains a covenant-not-to-sue provision, whereby AlexSam agreed it would not bring suit against Mastercard "for any claim or alleged liabilities . . . relating to Licensed Transactions" occurring before or during the term of the Agreement. J.A. 657 ¶ 2.2. Another relevant provision is labelled "Term and Termination," which provides, in relevant part:

> [T]his Agreement shall remain in full force and effect *for the life of the Licensed Patents* unless [events unrelated to the issues on appeal occur] . . . . The provisions of paragraphs 4 [consideration, including royalties] . . ., 8-10 [warranties, representations, indemnity, government approvals], 12 [entire agreement], 14 [severability] and 15 [disclaimer of warranties] shall survive the termination of this Agreement.

J.A. 662-64 ¶ 7 (emphasis added).

AlexSam and Mastercard agreed in 2007 to amend the License Agreement. Specifically, they modified the "Licensed Transaction" provision to "encompass each process of exchanging information related to an *information card* between a POI Device and MasterCard's financial network, provided that such process is covered by one of the Licensed Patents." J.A. 675 (emphasis added).

### C

This is not the only case in which AlexSam's '608 patent and the AlexSam-Mastercard License Agreement have been litigated. AlexSam sued Mastercard for patent infringement in the Eastern District of New York. *See AlexSam Inc. v. Mastercard Int'l Inc.*, No. 22-2046, 2024 WL 825658 (Fed. Cir. Feb. 28, 2024), *rev'g and remanding* No. 15-CV-2799, 2022 WL 2541433 (E.D.N.Y. July 7, 2022)

("Mastercard Case"). An appeal in the Mastercard Case was resolved by another panel of this court during the pendency of this AlexSam-Aetna case. *See id.* As relevant here, the Mastercard Case determined that the "License Agreement has terminated" and that its "covenant not to sue does not survive the termination of the License Agreement." 2024 WL 825658 at *1.

D

AlexSam filed its initial complaint against Aetna on June 28, 2019 ("Original Complaint"). In the Original Complaint, AlexSam alleged that Aetna's VISA Products directly and indirectly infringed claims of the '608 patent. AlexSam filed an amended complaint ("First Amended Complaint") on October 4, 2019, adding allegations that Aetna's Mastercard Products also directly and indirectly infringed the '608 patent.

Shortly thereafter, the parties filed a joint report with the district court, advising it, among other things, that Aetna "asserts that AlexSam's claims are barred in whole or in part by the doctrine[] of prior license." J.A. 2525. Aetna then filed a motion to dismiss the First Amended Complaint, on the grounds that "Alex[S]am's claim of infringement against the [Mastercard Products] fails as a matter of law because if [those products] practiced Claim 32 or Claim 33 of the '608 patent using the MasterCard network then [any infringing product] was necessarily a licensed product under the [License Agreement]." J.A. 470; *see also* J.A. 90. AlexSam mooted the motion by amending its complaint once again, filing a Second Amended Complaint that added a claim seeking a declaratory judgment that the Mastercard Products were not licensed, which would defeat Aetna's license defense. On January 10, 2020, Aetna moved to dismiss AlexSam's Second Amended Complaint.

Before AlexSam could file its opposition to Aetna's motion, the district court stayed the case pending the Judicial Panel on Multidistrict Litigation's ("JPML") consideration of AlexSam's request to consolidate this case with other proceedings in which AlexSam was asserting the '608 patent against other defendants, including Mastercard. After the JPML denied AlexSam's request, the parties agreed to continue to defer discovery in view of the then-ongoing COVID-19 global pandemic. They further agreed that briefing on Aetna's motion to dismiss the Second Amended Complaint should be completed. AlexSam attached to its opposition brief a proposed Third Amended Complaint.

On September 11, 2020, the district court granted Aetna's motion to dismiss the Second Amended Complaint and dismissed all of AlexSam's claims. The district court found that AlexSam could not prevail on its claims based on the Mastercard Products because Aetna had an express license via the License Agreement to market those products. The court further concluded that AlexSam failed to state a claim of direct infringement based on the VISA Products because only third-party customers, and not Aetna itself, could have directly infringed. It appeared to the district court that AlexSam's accusations were largely targeted at Aetna's subsidiaries, who were not defendants, and that "AlexSam fail[ed] to allege control or direction by Aetna which would warrant disregarding the corporate form." J.A. 39. The court found additional pleading deficiencies in connection with AlexSam's claims of indirect infringement. Lastly, the court dismissed AlexSam's declaratory judgment claim for being duplicative of Aetna's licensing defense.

In dismissing the Second Amended Complaint, the district court also denied AlexSam's request to file the proposed Third Amended Complaint it had attached to its briefing. The court reasoned that because AlexSam had drafted its Third Amended Complaint without having the

benefit of the court's identification of its pleading failures, the best way forward was to permit AlexSam to seek leave to file another version of a Third Amended Complaint, "to the extent the deficiencies identified in [the trial court's] ruling can be addressed." J.A. 47. AlexSam then moved for reconsideration of the dismissal and also sought leave to amend or correct its complaint. The district court denied these motions, as well as subsequent requests to file an amended complaint, because they did not, in the court's view, cure the pleading defects. It further faulted AlexSam for seeking to expand the case "well beyond the scope of [correcting] the deficiencies identified in the Court's ruling," including by belatedly seeking to add other Aetna entities as defendants. J.A. 68. Eventually, after AlexSam had filed or sought to file six separate versions of its complaint, the district court dismissed all of AlexSam's claims with prejudice.

AlexSam timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a).

## II

We review district court grants of motions to dismiss for failure to state a claim, brought under Federal Rule of Civil Procedure 12(b)(6), according to the law of the applicable regional circuit, here the Second Circuit. *See Fair Warning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1092 (Fed. Cir. 2016). "In the Second Circuit, grant of a motion to dismiss is reviewed *de novo* to determine whether the claim is plausible on its face, accepting the material factual allegations in the complaint and drawing all reasonable inferences in favor of the plaintiff." *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141 (Fed. Cir. 2018). Review of a motion to dismiss under Rule 12(b)(6) is generally limited "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by

reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge," if the plaintiffs "relied on [them] in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.") (internal emphasis omitted).

We apply our own law to the specific question of whether a complaint states a claim of patent infringement on which relief may be granted. *See generally Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1365 (Fed. Cir. 2001) ("[W]e will apply our own law to both substantive and procedural issues intimately involved in the substance of enforcement of the patent right.") (internal quotation marks omitted). As we explained recently in *Bot M8 LLC v. Sony Corporation of America*, 4 F.4th 1342, 1346 (Fed. Cir. 2021), "patentees need not prove their case at the pleading stage." To the contrary, an adequate complaint need only contain "some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.* at 1353. More particularly: "[a] plaintiff is not required to plead infringement on an element-by-element basis. Instead, it is enough that a complaint place the alleged infringer on notice of what activity . . . is being accused of infringement." *Id.* at 1352 (internal citations and quotation marks omitted; alterations in original). "[W]hile a patentee's pleading obligations are not insurmountable, a patentee may subject its claims to early dismissal by pleading facts that are inconsistent with the requirements of its claims." *Id.* at 1346.

III

The district court dismissed the entirety of AlexSam's Second Amended Complaint and later denied each of its efforts to amend. On appeal, AlexSam asks us to review the following conclusions of the district court: (i) that Aetna's Mastercard Products are licensed and, therefore, cannot directly or indirectly infringe claims 32 and 33 of the '608 patent, and (ii) that it is implausible to believe that Aetna itself "makes" or "uses" the VISA Products. Undertaking de novo review, we reach different conclusions than the district court, and, thus, vacate and remand portions of its judgment of dismissal.

A

We begin with AlexSam's claims of patent infringement directed at Aetna's Mastercard Products. The district court dismissed these claims based on Aetna's license defense.[2] In particular, Aetna argued before the district court that AlexSam's "claim of infringement against the PayFlex MasterCard card fails as a matter of law because if the PayFlex MasterCard card practiced Claim 33 of the '608 patent using the MasterCard network then it was necessarily a licensed product" under the License Agreement. J.A. 746 (internal emphasis omitted). The district court agreed with Aetna, holding that the Mastercard Products came within the scope of the license and that Aetna was a sublicensee.

---

[2] There is no dispute that, for those transactions for which AlexSam granted Mastercard an express license, Aetna has a sublicense by virtue of the terms of the License Agreement. *See Alexsam, Inc. v. IDT Corp.*, 715 F.3d 1336, 1346 (Fed. Cir. 2013) ("[A]ny activation transaction covered . . . and taking place over the MasterCard network was automatically deemed sublicensed.") (internal quotation marks omitted).

We agree, instead, with AlexSam that the district court erred by resolving the Mastercard licensing issues "on the limited information provided" in the Second Amended Complaint, its attachments, and the motion to dismiss briefing. Open. Br. at 10.[3] Not only is the scope of the license narrower than the district court seems to have understood, but there are also open issues remaining that need to be resolved before the impact of the license on AlexSam's allegations can be fully assessed.[4]

---

[3] Contrary to Aetna's contention, AlexSam did not waive and abandon its Mastercard Products infringement claims by seeking leave to file a proposed Third Amended Complaint that would have limited the case only to VISA Products. *See* Response Br. at 52-53. As AlexSam explains, it proposed to delete the Mastercard claims only after, and because, the district court had dismissed those claims as licensed. *See* Reply Br. at 22-23. AlexSam chose to proceed on its remaining claims in order to obtain a final judgment from which it could appeal. *See id.*

[4] One place we do not agree with AlexSam is on its contention that the district court required AlexSam to overcome Aetna's license defense by pleading facts related to the defense in its complaint. The sentence on which AlexSam bases this argument seems to us instead to be nothing more than a general criticism of AlexSam's briefing and arguments. *See generally Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021) ("[A] plaintiff ordinarily need neither anticipate, nor plead facts to avoid, a defendant's affirmative defenses at the pleadings stage."); *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1361–62 (Fed. Cir. 2019) ("[A] plaintiff generally need not plead the lack of affirmative defenses to state a valid claim . . . .") (internal quotation marks omitted).

As patent infringement is the practice of a patent claim without consent of the patentee, the existence of a license, express or implied, provides an affirmative defense to infringement. *See, e.g.*, *McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995) ("A licensee, of course, has an affirmative defense to a claim of patent infringement."); *Macom Tech. Sols. Holdings, Inc. v. Infineon Techs. AG*, 881 F.3d 1323, 1329 (Fed. Cir. 2018) (describing license as "in essence nothing more than a promise by the licensor not to sue the licensee") (internal citations omitted); *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 878 (Fed. Cir. 1995) ("[T]he alleged infringer . . . had the burden of establishing the existence of an implied license as an affirmative defense."). In the Second Circuit, "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998). The "face of the complaint" is construed for these purposes as also including documents in plaintiff's possession on which it relies in stating its claims or which it incorporates in the complaint. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("[W]e may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit.").

Considering these materials, we reach a different conclusion than the district court did as to the scope of the license. We further see material open questions that the district court does not appear to have resolved.

First, we conclude that the license granted by the License Agreement extends only to transactions involving activation of, or adding value to, an account. The pertinent

language of the License Agreement is clear: the license being granted by AlexSam to Mastercard is "to process and enable others to process Licensed Transactions," with a "Licensed Transaction" defined as "each process of *activating or adding value* to an account or subaccount which is associated with a transaction that utilizes MasterCard's network or brands where data is transmitted between a POI Device [i.e., "Point-Of-Interaction Device," which includes a Point of Service ("POS") terminal] and MasterCard's financial network or reversing such process, provided that such process is covered by one of the Licensed Patents." J.A. 656 ¶ 1.3 (emphasis added).

That the Agreement goes on to clarify that "[s]uch Licensed Transaction includes the *entire value chain and all parts of the transaction* and may involve other parties including but not limited to: issuing banks, acquiring banks, processors, merchants, card vendors and third party marketing firms," J.A. 656 ¶ 1.3 (emphasis added), does not eliminate the requirement that a licensed "chain" of transactions must include an activation or adding value transaction. The plain language of the License Agreement establishes, then, that no portion of a "value chain" that does not include an activation or adding value component is licensed.

The patent claims asserted by AlexSam in the Second Amended Complaint, claims 32 and 33, are not limited to transactions involving activation or adding value. Thus, the scope of the asserted claims is broader than the scope of the license granted to Mastercard in the License Agreement. Consequently, not every act that infringes these claims will necessarily be licensed. It remains possible – and, as alleged in the Second Amended Complaint, plausible – that transactions involving Aetna's Mastercard Products are both *within* the scope of AlexSam's asserted claims and *outside* the scope of the license.

The district court's conclusion to the contrary is incorrect. The district court's view seems to have been that *any* transaction in the Mastercard value chain is licensed, even if that transaction did not include an activation or adding value step. J.A. 20. As support, the district court relied on our decision in *Alexsam, Inc. v. IDT Corp.*, 715 F.3d at 1346. There we affirmed a district court determination that the same License Agreement we are construing today creates a license that extends to any "activation" transaction carried out on the Mastercard network. Our statements in *IDT* were made in the context of a case in which the patent claims asserted by AlexSam were also limited to "activation transactions." *Id.* at 1339 ("The claims at issue in this appeal are drawn to a system for *activating* multi-function cards using a point-of-sale ('POS') terminal, such as a cash register or a free-standing credit card reader.") (emphasis added). Therefore, the license provided a full defense to patent infringement, since "any activation transaction covered by the patents in suit and taking place over the MasterCard network was automatically 'deemed sublicensed.'" *Id.* at 1346.

The holding in *IDT* does not result in the license providing a full defense to Aetna here. This is because, as we have observed, claims 32 and 33 of the '608 patent are not themselves limited to activation or adding value transactions, and the operative complaint alleges that the accused Mastercard Products are "medical cards and do not require an activation transaction," unlike, for instance, claims 57 and 58 that had been asserted against IDT. J.A. 477. Just because all of the alleged activity at issue in *IDT* was licensed does not make all of the allegedly infringing activity in this case also licensed.

In objecting to AlexSam's interpretation of the License Agreement, Aetna points to the Second Amended Complaint's allegation that "[a]cts by [Aetna] that contribute to the infringement of these retailers include providing the

POS devices and bank Processing Hub computers which *are capable of initiating the activation* and loyalty point crediting *processes*." Response Br. at 46 (citing J.A. 485; emphasis added by Aetna). This allegation – if it remains in the operative complaint on remand and, therefore, must be taken as true[5] – may support a determination that some of the alleged infringement involving the Mastercard Products is licensed, i.e., those transactions involving an activation or adding value step. It does not, however, expand the scope of the license to reach transactions that do not involve an activation of adding value step. Nor does it restrict AlexSam's allegations to only such transactions.

Accordingly, the district court erred by finding that a license covered all of the alleged infringement involving the Mastercard Products.[6] Because the district court misconstrued the scope of the license, we must vacate the portion of its judgment dismissing the claims that Aetna infringes with respect to the Mastercard Products.

Additionally, on remand, the district court may find it necessary to resolve other issues it did not need to address given its now-vacated interpretation of the scope of the license. These issues may include whether the License

---

[5] AlexSam insists that this allegation appeared in the Second Amended Complaint by "mistake." Reply Br. at 25 n.8. We are not in a position to evaluate this unusual contention. We note, however, that the requirement to take as true all well-pled factual allegations in the course of evaluating a motion to dismiss extends to *all* such allegations in a complaint.

[6] Aetna does not contend that it enjoys an implied license with a scope any broader than its express license. It follows that our analysis of the express license applies equally to any implied license that may also exist.

Agreement terminated before the expiration of the '608 patent[7] and the impact, if any, of the 2007 amendment to the Agreement.[8] We leave it to the district court to decide these issues, if needed, on remand.

Thus, we vacate the district court's dismissal of these infringement claims and remand for further proceedings.

B

We turn next to AlexSam's claims of patent infringement based on Aetna's VISA Products. Here, too, we find the district court erred in its dismissal order, in connection with AlexSam's claims of both direct and indirect infringement.

---

[7] AlexSam contends that the license expired prior to the '608 patent terminating. J.A. 1026. Aetna disagrees. J.A. 1185. In the MasterCard Case, 2024 WL 825658, at *1, we considered the same License Agreement and held that "the covenant not to sue does not survive the termination of the License Agreement," but we were not required to decide whether the License Agreement terminated at the same time as the '608 patent expired. The district court may need to resolve this dispute on remand.

[8] The 2007 amendment altered the definition of Licensed Transaction "to further encompass each process of exchanging information related to an *information card* between a POI Device and MasterCard's financial network, *provided that such process is covered by one of the Licensed Patents*." J.A. 675 (emphasis added). Aetna interprets the amendment as broadening the original license, while AlexSam argues the amendment is irrelevant because the accused products are not information cards. We leave this issue for the district court to decide, if necessary.

1

Before we address the district court's reasoning for dismissing the VISA Products claims, we reiterate the framework for a sufficient pleading of patent infringement. Although we have done so on multiple previous occasions, *see, e.g.*, *Bot M8*, 4 F.4th 1342; *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018), the standard bears repeating.

Federal Rule of Civil Procedure 8(a)(2) "generally requires only a plausible short and plain statement of the plaintiff's claim," showing that the plaintiff is entitled to relief. *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (internal quotation marks omitted). Rule 8 "does not require detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Thus, in order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the "plausibility standard is not akin to a 'probability requirement,'" it does "ask[] for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, a plausible claim must do more than merely allege entitlement to relief; it must support the grounds for that entitlement with sufficient factual content. *See id.*

"Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. However, because a complaint "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" it follows that "[s]pecific facts are not necessary" to support every allegation in the complaint.

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (alteration in original; quoting *Twombly*, 550 U.S. at 555). We have added that "[t]he level of detail required in any given [patent] case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Bot M8*, 4 F.4th at 1353. Thus, the amount of detail required to provide a defendant the requisite fair notice of the plaintiff's claims will also vary.

In the Second Circuit, a court evaluating whether a complaint has met the plausibility standard and, hence, stated a claim on which relief may be granted, must take all well-pled factual allegations as true. *See Littlejohn v. City of New York*, 795 F.3d 297, 306-07 (2d Cir. 2015). This concept, however, is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Furthermore, pleadings that "are no more than conclusions[] are not entitled to the assumption of truth." *Id.* at 679.

Whether a particular allegation in a complaint is well-pled and factual, and therefore accorded a presumption of truth, or is instead a legal conclusion or in other respects merely conclusory – and, hence, not credited at the motion to dismiss stage – can be a crucial issue. Yet we have not explicitly set out the standard of review applicable to a trial court's categorization of a complaint's allegations. That is, we have not said whether we accord deferential or non-deferential review to a trial court's decision that an allegation is factual or legal, well-pled or merely conclusory. We hold today that our review of trial court determinations on these matters is de novo.

We reach this conclusion for several reasons. First, the overall endeavor of evaluating a motion to dismiss, both in

a trial court and on appeal, is a matter of law, not requiring any factual determinations or exercises of discretion. *See generally Bell v. Hood*, 327 U.S. 678, 682 (1946) ("Whether the complaint states a cause of action on which relief could be granted is a question of law."). It is well-settled that appellate review of a district court decision to grant a motion to dismiss for failure to state a claim on which relief may be granted is de novo. *See Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013); *see also Ottah*, 884 F.3d at 1141.

Second, although neither the Supreme Court nor our court has expressly analyzed what standard of review is applicable in the context we are considering today, we have both consistently – albeit implicitly – applied de novo review to trial court determinations that certain complaint allegations are conclusory.[9] This is illustrated in the seminal cases of *Ashcroft v. Iqbal* and *Bell Atlantic v. Twombly*. Their analyses strongly imply that appellate review accords no deference to a trial court's view that a complaint allegation is merely conclusory.

In *Iqbal*, 556 U.S. at 674, the Court stated that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires *the*

---

[9] While we have not found any of our sister circuits explicitly analyzing this question, it appears that they, too, apply de novo review to a district court determination that a complaint's allegation is merely conclusory. *See, e.g.*, *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229, 237 (2d Cir. 2015) ("We respectfully part ways with the able district court's analysis on this point. As an initial matter, we do not believe that Espinoza's allegations were 'conclusory.'"); *Rahim v. Morgan*, 30 F.3d 142 (10th Cir. 1994) (unpublished table decision) (reviewing dismissal under Rule 12(b)(6), which turned on whether pro se complaint was too conclusory, without deference).

*reviewing court* to draw on *its* judicial experience and common sense," *id.* at 679 (emphasis added), suggesting that appellate review is based on the appellate court's own independent view and is not at all deferential to the district court. The Court elsewhere added that "determining whether respondent's complaint has the 'heft' to state a claim is a task well within an appellate court's core competency," a formulation suggesting, again, that an appellate court makes its own de novo determination. *Id.* at 674.

In *Twombly*, 550 U.S. at 564-70, the Court determined that while the plaintiff had pointed to parallel conduct by defendants, the plaintiff had also failed to allege sufficient facts to make out a plausible case that this conduct was the result of unlawful collusion. While the Court "agree[d] with the [d]istrict [c]ourt's assessment that antitrust conspiracy was not suggested by the facts adduced," it appeared to reach this conclusion without deferring to the district court's decision. *Id.* at 569.

Likewise, in *Samish Indian Nation v. United States*, 419 F.3d 1355, 1364 (Fed. Cir. 2005), we equated our evaluation of the complaint with that undertaken by the Court of Federal Claims, stating, "[l]ike the trial court, this court tests the sufficiency of the complaint as a matter of law, accepting as true all non-conclusory allegations of fact, construed in the light most favorable to the plaintiff." We undertook an independent review and reached the opposite conclusion from that of the trial court, reversing in part the Court of Federal Claims' dismissal of the Samish Indian Nation's complaint.

Third, we find additional support for our decision to apply de novo review when we look to the factors the Supreme Court has relied on in deciding, in other contexts, unsettled questions of what standard of review to apply to a district court decision. *See Pierce v. Underwood*, 487 U.S. 552, 557-63 (1988) (deciding to apply abuse of discretion review to district court analysis of whether government position was

substantially justified); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 408-09 (1990) (same for review of imposition of sanctions under Fed. R. Civ. P. 11); *see also Hall v. Sec'y of Health & Hum. Servs.*, 640 F.3d 1351, 1356-57 (Fed. Cir. 2011) (relying on *Pierce* in deciding to apply abuse of discretion review to special master award of attorney's fees in vaccine case).

For instance, in *Pierce*, 487 U.S. at 557-63, the Court confronted the question of which standard of review to apply to a district court's award of attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d). It began its discussion by noting it had not previously established a definitive test for deciding appellate standard of review questions and would not do so in *Pierce*. "No more today than in the past shall we attempt to discern or to create a comprehensive test," the Court wrote, although it went on to helpfully identify "significant relevant factors" useful to the task. *Id.* at 559.

Each of *Pierce*'s "significant relevant factors" implicated here favors de novo review. As articulated by the Court, these factors begin with whether "as a matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question." *Id.* at 559-60 (internal quotation marks omitted). Here, because review of a complaint calls only for review and interpretation of documents, tasks appellate courts take up on a daily basis, de novo appellate review is entirely consistent with sound judicial administration. The next applicable factor is whether there are components to the analysis that are "known only to the district court" that may somehow not be apparent to an appellate court from its review of a closed record. *Id.* at 560. Here, there are not. Evaluating the sufficiency of a complaint does not involve, for example, observing witness testimony, making credibility determinations, or exercising discretion. Nor, turning to another *Pierce* factor, are there any "untoward consequences," such as misuse of scarce appellate judicial

resources, that flow from applying de novo review to the question of whether an allegation is merely conclusory. *See id.* at 561.

The remaining factors identified by the Court in *Pierce* are not applicable, although neither do they in any way undermine our decision to apply de novo review. The "language and structure of the governing statute" is not relevant here, nor is there a "substantial amount of [] liability" being imposed. *Id.* at 559, 563. We also do not confront circumstances, like those described in *Pierce*, where "the district judge's full knowledge of the factual setting [could only] be acquired by the appellate court . . . at unusual expense." *Id.* at 560. Neither do we face a situation presenting "a multifarious and novel question, little susceptible, for the time being at least, of useful generalization, and likely to profit from the experience that an abuse-of-discretion rule will permit to develop." *Id.* at 562. While reasonable minds may certainly differ as to whether any particular allegation in a complaint is merely conclusory, the "needed flexibility" envisioned by the Court can be accomplished without deferential review of a district court's characterization of a complaint's allegation. *Id.*

Therefore, we hold that review of a trial court's determination that an allegation in a complaint attempting to state a claim for patent infringement is merely "conclusory," and need not to be taken as true when evaluating a motion to dismiss, is de novo.

2

With these principles in mind, we address the district court's dismissal of AlexSam's claims based on Aetna's VISA Products. We first consider the allegation that Aetna directly infringes through its own actions in connection with making and using the VISA Products. Then we turn to AlexSam's allegations that Aetna induces and contributes to others' direct infringement of the asserted claims.

a

First, the district court erred by concluding that AlexSam failed to allege a plausible claim of direct infringement by Aetna's making and using the VISA Products.[10]

"A plaintiff is not required to plead infringement on an element-by-element basis." *Bot M8*, 4 F.4th at 1352. Instead, it is enough "that a complaint place the alleged infringer on notice of what activity . . . is being accused of infringement." *Id.* (internal quotation marks omitted; alteration in original). As we noted above, "[t]he level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id.* at 1353.

AlexSam's Second Amended Complaint meets these requirements, particularly given the simplicity of the technology involved. Although not required to do so to avoid dismissal under Rule 12(b)(6), the complaint expressly maps each claim limitation to the accused VISA Products,

---

[10] AlexSam alleged that Aetna "ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises" the VISA Products. J.A. 477. AlexSam challenges only the dismissal of the infringement claims based on making and using the VISA Products. Therefore, we affirm the dismissal order to the extent it applies to the other alleged bases for direct infringement in connection with the VISA Products. AlexSam has also not appealed the district court's finding that it failed to sufficiently plead divided infringement or willful infringement or its dismissal of AlexSam's declaratory judgment claim. We affirm these unchallenged aspects of the district court's judgment as well.

including by attaching claim charts. J.A. 537-42. The Second Amended Complaint also uses photographs, and incorporates by reference an expert declaration, to further illustrate how, in AlexSam's not unreasonable view, Aetna's VISA Products infringe.

For example, AlexSam's contention that Aetna infringes by "making" the VISA Products begins with the allegation that Aetna offers its customers a Health Savings Account ("HSA") VISA card. This VISA card has multiple functions, including serving as a debit card and accessing "a processing hub for medical data supported by one of Aetna's medical plans." J.A. 541. The card has a unique identification number located on it: a bank identification number ("BIN") approved for use in a banking network by the American Banking Association. J.A. 540. The Second Amended Complaint alleges that Aetna provides and/or uses a transaction processor that receives card data, including the bank identification number, from an unmodified, existing, standard POS device. J.A. 541.

The Second Amended Complaint also states that Aetna provides, uses, or contracts with third parties to provide or use a processing hub to receive the card data from a transaction processor. Aetna alleges that "all Visa . . . Cards access a processing hub when used" and that the processing hub must access a first database when the card functions as a debit card, "to process the debit" transaction, and also "accesses a second database" when the card is serving "the medical services function." J.A. 541. The above allegations are sufficient to state a claim that Aetna infringes by "making" the infringing system. The Second Amended Complaint also adequately alleges that Aetna infringes by "using" such a system. "[T]o 'use' a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it." *Centillion Data Sys., LLC v. Qwest Commc'ns. Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011); *see also Intell.*

*Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017) (same).

AlexSam adequately alleges that Aetna controls the system since the complaint states that Aetna "owns, operates, or leases all equipment in the infringing system, or alternatively exercises direction and control over the operation of all equipment in the infringing system." J.A. 477. It further alleges that Aetna provides "debit/medical services card[s]" having BINs and "employs staff (e.g., an IT department) to operate the Processing Hub in order to interface with, install, configure, manage, monitor, test, and control the debit/medical services cards and other equipment in the infringing multifunction card system." J.A. 477-78. These are sufficient allegations of Aetna's control.

With respect to "benefit," we find sufficient the Second Amended Complaint's attached expert declaration, which is incorporated into the complaint by reference, and which identifies the technical benefits derived by Aetna from use of the elements of the asserted claims. *See, e.g.*, J.A. 518 (expert opining that benefits include "[i]nitiating multifunction card transactions from any standard point of sale device (i.e. a regular credit card reader)," "[t]ransmitting transactions utilizing the standard banking network (which does not normally allow any non-standard transactions)," and "[a]llowing third parties (e.g.[,] non-banks and non-financial institutions) to participate in, and in some cases control, card transactions to provide functionality beyond simple credit and debit card transactions"); *see also* J.A. 521-27 (expert describing each element of claim and how they work together to achieve intended purpose of patent).

In urging us to affirm the district court's conclusion that the Second Amended Complaint's direct infringement allegations are inadequate, Aetna raises three principal arguments. Aetna contends that the Second Amended Complaint is: (i) conclusory, making allegations that are

undeserving of the presumption of truth; (ii) implausible, because its allegations are contradicted by documents attached to it; and (iii) insufficient to provide Aetna notice of what it must defend against in this litigation. We are not persuaded.

Considering the matter de novo, we disagree with the district court that many of the allegations we have described just above are conclusory and thus need not be taken as true. Instead, in the context of the relevant technology and the overall detail provided as to AlexSam's theory of infringement, including in claim charts and elaborated on by the incorporated expert report, these allegations are sufficiently specific and factual to constitute well-pled allegations. In evaluating Aetna's motion to dismiss, then, these allegations must be credited, here making it improper to dismiss the Second Amended Complaint.

Aetna additionally attacks the Second Amended Complaint for being "absurd on its face," given its repeated allegations that Aetna *itself* "owns, operates, or leases" point-of-sale devices. Response Br. at 33. Aetna insists that, in truth, "[t]hese are the types of devices that are commonly seen at merchants' stores, pharmacies, and medical offices – not at holding company corporate offices." *Id.* In Aetna's telling, "Aetna Inc.," the sole named defendant, is nothing more than "a non-operating parent holding company," and it is "other entities" – related to but distinct from Aetna – that "actually provided health insurance, administered benefit plans, or provided health debit cards." *Id.* at 3. Aetna asserts that its own non-operating status is confirmed by documents attached to the Second Amended Complaint, which it contends directly contradict the complaint. In Aetna's view, because all of AlexSam's direct infringement claims are predicated on Aetna's own actions, but the documents attached to the Second Amended Complaint show Aetna does not itself take these actions, AlexSam's infringement claims are implausible, requiring dismissal.

The district court agreed with Aetna that "[i]t is facially implausible that Aetna Inc. controls all banks and retailers, plus Mastercard and Visa." J.A. 31 (internal quotation marks omitted; alteration in original). We disagree. Instead, as AlexSam rightly notes, "Aetna's operational role is a contested issue of fact," one that the district court was not free to decide on a motion to dismiss. Reply Br. at 13; *see also Indust. Bankers Secs. Corp. v. Higgins*, 104 F.2d 177, 181 (2nd Cir. 1939) (observing that "whether [a party] is shown to be a mere holding or investment company" is question of fact) (internal quotation marks omitted). The Second Amended Complaint, after defining "Aetna Inc." as "Aetna," J.A. 457, alleges that "Aetna owns, operates, advertises, and/or controls the website, www.aetna.com, as well as various office locations and representatives across the country, through which Aetna sells, advertises, offers for sale, uses, or otherwise provides, including but not limited to, the [accused] products." *Id.* at 468. It further alleges that Aetna "owns, operates, or leases all equipment in the infringing system" and Aetna "employs staff (e.g., an IT department) to operate the Processing Hub in order to interface with, install, configure, manage, monitor, test, and control the debit/medical services cards and other equipment in the infringing multifunction card system." *Id.* at 477-78. In other words, the operative complaint expressly alleges that Aetna is not merely a holding company but, instead, an operating company that itself engages in infringing conduct.

Each of these allegations must be taken as true, unless they are directly contradicted by documents incorporated in the Second Amended Complaint. There are no such contradictions here. Neither in its briefing nor at oral argument has Aetna identified a single statement in a document attached to the Second Amended Complaint that actually contradicts the complaint's allegations about Aetna's own actions. For example, when we asked counsel to point us to any evidence of a direct contradiction, it

responded by directing us to Exhibit C, which states that "Aetna is the brand name for products and services provided by one or more of the Aetna group of subsidiary companies," *id.* at 572, and which also shows debit cards and billing statements labeled with the name of Aetna's subsidiary, Aetna Life Insurance Company. *See* Oral Arg. at 17:37-20:01, *available at* https://oralarguments.cafc.uscourts.gov/default.aspx?fl=22-2036_01092024.mp3 (citing J.A. 555-56). Counsel also referred to sections of the complaint describing how PayFlex provides the cards at issue, suggesting PayFlex is not Aetna itself. *See* Oral Arg. at 28:24-29:52. While Aetna succeeds in showing there is tension between the complaint's repeated allegations that Aetna itself, and not just its subsidiaries, engages in infringing activities, none of them – nor any others we have been able to identify – actually contradicts the allegations that Aetna itself, perhaps *in addition to* its subsidiaries, undertakes infringing conduct. Viewed in the light most favorable to AlexSam, as we must at this preliminary stage, all that the exhibits establish is that Aetna Inc.'s subsidiaries are responsible for allegedly infringing actions. This is not the same thing as establishing that Aetna Inc. is not responsible for such actions. The latter is the conclusion Aetna would need us to reach to sustain the district court's dismissal. On the record before us, at the procedural stage this case is at, we are unable to do so.[11]

---

[11] Given our conclusions that AlexSam has adequately pled a plausible theory of direct infringement based on Aetna "making" and "using" the VISA Products, we need not resolve the parties' related dispute as to whether AlexSam waived the particular theory that Aetna, as the "final assembler" of an infringing system, made the system. We also need not decide if AlexSam adequately pled that Aetna may be held liable as the alter ego of its

Finally, Aetna argues that the Second Amended Complaint "fails to provide Aetna Inc. notice of what activity . . . is being accused of infringement." Response Br. at 28 (internal quotation marks omitted). Again, we disagree. Aetna has fair notice of the allegations against which it must defend itself. It knows from the complaint that, with respect to direct infringement, it will have to counter AlexSam's contention that, for example, Aetna Inc., itself, owns, operates, leases or otherwise directs or controls all equipment in the infringing system, and employs staff to run and control the debit/medical services cards and equipment in the infringing system. And it knows from the attached claim charts and incorporated expert report how AlexSam maps each of the limitations of the asserted claims to Aetna's VISA Products.

Therefore, we conclude that the district court erred by granting Aetna's motion to dismiss the Second Amended Complaint's claims that Aetna directly infringes AlexSam's patent claims by making and using the VISA Products.[12]

---

allegedly infringing subsidiaries. If AlexSam wishes to pursue these contentions, it will be for the district court to decide whether to permit it to do so.

[12] As is clear from our discussion, AlexSam's direct infringement theories are reliant on the contention that Aetna itself performs each step of the asserted claims, a contention Aetna insists is entirely untrue. That we are required to reject Aetna's position in connection with a motion to dismiss should not be mistaken for a belief that AlexSam will actually be able to prove this fundamental premise of its claims. On remand, the district court may wish to consider prioritizing the issue of whether Aetna Inc. can be proven to be an operating company as opposed to a non-operating holding company. The district court has

b

Next, we turn to AlexSam's claims of induced and contributory infringement.

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer specifically intended [another party] to infringe [the patent] and knew that the [other party's] acts constituted infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (internal quotation marks omitted; alterations in original). Circumstantial evidence may suffice to prove specific intent. *See MEMC Electr. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005).

AlexSam alleges that Aetna knew and intended that its customers would infringe AlexSam's patent claims by using the VISA Products. *See, e.g.*, J.A. 479 (Second Amended Complaint alleging that "Defendant knew that its actions, including, but not limited to any of the VISA Accused Products, would induce, have induced and will continue to induce infringement by its customers by continuing to sell, support, and instruct its customers on using the VISA Accused Products"). Contrary to Aetna's contention, AlexSam was not required to identify a specific customer. "Given that a plaintiff's indirect infringement claims can succeed at trial absent direct evidence of a specific direct infringer, we cannot establish a pleading standard that requires something more." *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323,

---

discretion, for instance, to stay all other portions of the case and allow the parties to take discovery on, and brief a case-dispositive motion, limited to the issue of Aetna Inc.'s allegedly directly infringing acts.

1336 (Fed. Cir. 2012). The Second Amended Complaint references brochures and other promotional material sufficient to support a plausible inference that at least one directly infringing customer – for example, a recipient of one of these brochures or promotional materials – exists.

AlexSam plausibly alleges that Aetna had knowledge of its infringement based on a notice letter AlexSam sent to Aetna. This letter, which is incorporated into the Second Amended Complaint, identified the ’608 patent and notified Aetna of AlexSam’s view that Aetna’s covered “health savings account and flexible spending account debit card systems” infringe claims of this patent. J.A. 640. Contrary to Aetna’s suggestion, we do not require patentees to plead that an alleged inducer of infringement had knowledge of the specific patent claims a patentee later asserts in litigation. *See Bot M8*, 4 F.4th at 1352 (finding that plausible claim may be stated, and avoid dismissal, without pleading “on an element-by-element basis”).

With respect to the “intent” prong, AlexSam alleged that Aetna, notwithstanding its knowledge of the ’608 patent and that its customers infringed it, “continue[d] to encourage, instruct, enable, and otherwise cause its customers to sell” the Accused Products. J.A. 479. AlexSam further alleges that “Defendant has specifically intended its customers to use the VISA Accused Products in its infringing systems in such a way that infringes the Asserted Claims by, at a minimum, providing and supporting the VISA Accused Products and instructing its customers on how to use them in an infringing manner, at least through information available on Defendant’s website including information brochures, promotional material, and contact information.” *Id.*; *see also* J.A. 549 (“Using Your HSA: . . . The debit card will be sent to you prior to your health plan taking effect and can be used by any health care provider that accepts Visa.”). Taken together, these allegations, which must be taken as true, are sufficient at

the pleadings stage to make it plausible that Aetna indeed intended that its customers infringe AlexSam's patent.

Accordingly, AlexSam sufficiently pled induced infringement based on the VISA Products. Thus, we vacate the district court's dismissal of these claims.

AlexSam also sufficiently alleged a claim of contributory infringement. To state a claim for contributory infringement, a complaint must adequately allege: "(1) the defendant had 'knowledge of the patent in suit,' (2) the defendant had 'knowledge of patent infringement,' and (3) the accused product is not a staple article or commodity of commerce suitable for a substantial non-infringing use." *Bio-Rad Lab'ys., Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1335 (Fed. Cir. 2021) (quoting *Commil USA, LLC v. Cisco Sys., Inc.,* 575 U.S. 632, 639 (2015)). Further, the component must constitute "'a material part of the invention.'" *Commil*, 575 U.S. at 639 (quoting 35 U.S.C. § 271(c)).

The same allegations that adequately plead knowledge of the patent and knowledge of the patent infringement for purposes of induced infringement suffice for purposes of AlexSam's contributory infringement claim as well. *See Bio-Rad Laby's,* 998 F.3d at 1335-36 (evaluating both contributory and induced infringement simultaneously). With respect to whether the Aetna-supplied component is a staple with substantial non-infringing uses, the Second Amended Complaint alleges that Aetna provides a "Processing Hub," which it describes as a "special-purpose computer," J.A. 461, "especially adapted for use in the infringing systems, and it has no substantial non-infringing uses," J.A. 479. AlexSam further alleges that the "Processing Hub" is the "nerve center" and "primary component of the patented system." J.A. 463-65. Each of these allegations was supported by an expert declaration attached to the complaint. Together, and taking these well-pled factual allegations as true, AlexSam has sufficiently alleged

there are no substantial non-infringing uses of Aetna's "Processing Hub" component of the accused system.

Accordingly, AlexSam sufficiently pled its claim of contributory infringement based on the VISA Products. Thus, we vacate the district court's dismissal of this claim.[13]

IV

We have considered the parties' remaining arguments and find them unpersuasive. Because we find the district court erred by dismissing the entirety of AlexSam's Second Amended Complaint, its judgment is affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.

**AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED**

**COSTS**

No costs.

---

[13] Because we have found that the portions of the Second Amended Complaint on which AlexSam wishes to proceed are sufficient to state claims on which relief may be granted, AlexSam's challenge to the district court's denial of its requests to amend the operative complaint is moot.